PEOPLE v NOWACK

Docket No. 113405. Argued December 7, 1999 (Calendar No. 1). Decided
    July 11, 2000.

> Paul W. Nowack was convicted by a jury in the Ingham Circuit Court,
> Peter D. Houk, J., of two counts of felony murder and one count of
> arson of a dwelling house, arising from a gas explosion and fire as
> a result of a failed suicide attempt by the defendant in the apart-
> ment building where he lived. The Court of Appeals, D. E. HOLBROOK
> JR. and NEFF, JJ. (GRIFFIN, P.J., dissenting), reversed in an unpub-
> lished opinion per curiam on the ground of insufficient evidence
> and remanded with instructions to enter a conviction of involun-
> tary manslaughter. It found that what was missing was sufficient
> evidence to establish that the ignition of the gas was the result of
> an intentional act by the defendant. The majority assumed that the
> defendant deliberately filled his apartment with gas, but held that
> the evidence did not establish that he intended to ignite the gas,
> and that an equally possible explanation was that the defendant
> merely intended to asphyxiate himself (Docket No. 196655). The
> people appeal.
>
>     In an opinion by Justice CORRIGAN, joined by Chief Justice
> WEAVER, and Justices TAYLOR, YOUNG, and MARKMAN, the Supreme
> Court *held*:
>
>     The evidence of arson was legally sufficient.
>
>     1. The test for determining the sufficiency of evidence in a crimi-
> nal case is whether the evidence, viewed in a light most favorable
> to the people, would warrant a reasonable juror in finding guilt
> beyond a reasonable doubt. A reviewing court is required to draw
> all reasonable inferences and make credibility choices in support of
> the jury's verdict. The scope of review is the same whether the evi-
> dence is direct or circumstantial. The prosecution need not negate
> every reasonable theory consistent with innocence. Instead, it is
> bound to prove the elements of the crime beyond a reasonable
> doubt. It is not obligated to disprove every reasonable theory con-
> sistent with innocence to discharge its responsibility; it need only
> convince the jury in the face of whatever contradictory evidence
> the defendant may provide. In this case, the prosecution presented
> sufficient evidence of the elements of felony murder. The evidence

supported a reasonable inference that the defendant intentionally caused the explosion and resulting fire, and that he intended to kill himself quickly. Two persons died in the explosion. The circumstantial evidence and reasonable inferences to be drawn indicated that the defendant intentionally released and ignited gas in his apartment building, creating a high risk of death or great bodily harm. In addition, the defendant committed the crime of arson.

2. The Court of Appeals mistakenly posited that common-law arson requires proof of an intentional act of ignition on the implicit assumption that common-law arson is a specific intent crime. Specific intent crimes involve a particular criminal intent beyond the act done, while general intent crimes involve merely the intent to do the physical act. Common-law arson is a general intent crime. The enduring common-law definition of the mental element of arson is that the burning be done maliciously and voluntarily. A malicious burning occurs when the defendant either intentionally or wantonly burns property without justification or excuse. Wanton arson required an intentional act that created a high risk of burning a dwelling house, which risk was known by the actor and disregarded when the actor performed the risk-taking act. The word "wilfully" adds nothing to the common-law concept of malice. The same level of criminal culpability exists regardless of whether a defendant wantonly and wilfully disregards the consequences of the actions or intends to cause the prohibited harm. Accordingly, the required mental state for arson is either an intent to burn the dwelling house of another, or doing an act in circumstances where a plain and strong likelihood of such a burning exists.

3. Proof of common-law arson does not require a specific intent to cause injury to a particular person or damage to particular property. To establish that a defendant acted wilfully or maliciously and voluntarily, the prosecution must prove that the defendant intended to do the physical act constituting the actus reus of arson, i.e., starting a fire or doing an act which results in the starting of a fire (intentional arson), or that the defendant intentionally committed an act that created a very high risk of burning a dwelling house, and that, while committing the act, the defendant knew of the risk and disregarded it (wanton arson). While an intent to start a fire may sound like specific intent language, the intent is simply one possible means of proving malice in an arson case. Such an intent is not a necessary element of arson. The wilful and wanton commission of an act that creates a very high risk of burning a dwelling house is an alternative method of proving malice.

Justice CAVANAGH, joined by Justice KELLY, concurring, stated that the Court's determination that common-law arson is a general

intent crime makes it unnecessary to resolve the dispute over whether the defendant intentionally ignited the fumes in his apartment. The defendant acted in wanton or wilful disregard of the plain and strong likelihood that a burning of another's dwelling house was likely to result from his decision to fill his apartment with gas fumes. Because the defendant acted maliciously and voluntarily, and because the evidence demonstrates that the defendant committed the underlying arson even if he did not act intentionally, it is unnecessary to speculate about whether the fumes were intentionally ignited.

Vacated.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Stuart J. Dunnings III*, Prosecuting Attorney, and *Samuel R. Smith*, Assistant Prosecuting Attorney, for the people.

*Gerald W. Gibbs* for defendant-appellee.

Amicus Curiae:

*Elwood Brown*, President, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

CORRIGAN, J. We granted leave in this felony murder case to determine whether the prosecution presented sufficient evidence of common-law arson, the felony underlying the convictions, MCL 750.316; MSA 28.548. A jury convicted defendant of two counts of felony murder, MCL 750.316; MSA 28.548, and one count of arson of a dwelling house, MCL 750.72; MSA 28.267. Defendant was thereafter sentenced to concurrent terms of life imprisonment on the felony murder counts, while the arson conviction was vacated. The Court of Appeals, in a split opinion, reversed on the ground of insufficient evidence and remanded with instructions to enter a conviction of involuntary man-

slaughter. We hold that the evidence of arson was legally sufficient and reinstate defendant's convictions of felony murder.

This case also affords us the opportunity to clarify the state of mind required to prove common-law arson. The Court of Appeals erred in assuming that common-law arson is a specific intent crime. Common-law arson is a general intent crime that merely requires the prosecutor to prove malice. It occurs in circumstances where a defendant intentionally or wantonly burns property without justification or excuse.

## I. UNDERLYING FACTS

On January 15, 1995, the ten-unit Lansing apartment building where defendant lived exploded and burned. The force of the explosion fragmented the building. The three center units were completely leveled and the roof was blown off. A sixty-seven-year-old woman and a ten-year-old boy who lived in the center section in apartments adjoining defendant's were killed. Ironically, although defendant was present in his apartment where the explosion originated, he sustained only burns and minor injuries. He walked away from the explosion and spoke coherently with investigators shortly thereafter.

The prosecution theorized that defendant attempted suicide by releasing gas into his apartment, resulting in the explosion and fire. Defendant essentially contended that the explosion and fire were accidental. The defense suggested various possible accidental sources of the gas, including the furnace and water heater. Further, the defense argued that if defendant

deliberately released the gas, he may have been trying to asphyxiate himself or to gain attention rather than cause an explosion. By their verdicts, the jury accepted the prosecution's theory.

The evidence showed that defendant had attempted suicide three times in 1992. On January 8, just one week before the fire, defendant told his minister and later told a police officer that he wanted to "end it all" by putting a "bullet in his head." The officer took defendant to a psychiatric hospital where he remained until the day before the explosion.

Defendant obtained a temporary pass to leave the psychiatric hospital on January 14. He asked his former girlfriend, Kathryne Russell, to transport him home from the hospital, but she wanted defendant to stay in the hospital. During their conversation, defendant threatened suicide and said that nobody would catch him this time. Despite defendant's suicidal threat, Russell did not comply with defendant's wishes. Defendant returned to his apartment by cab.

On the day of the crime, someone released gas into defendant's apartment by deliberately tampering with the gas pipe at its union with the water heater and loosening the pipes. Gas built up in defendant's apartment; it thereafter ignited, causing the explosion and fire. None of the other apartments experienced any gas buildup. The experts opined that the cause of the explosion was the combustion of an almost perfect mix of methane gas and air that "literally made a bomb of apartment number 5 . . . ."

The prosecution's experts systematically excluded accidental sources of the blast. They found no electrical malfunction because the building's gas regulator was in good condition and the gas lines had not rup-

tured. Given the exclusion of various accidental sources of gas and the evidence that the pipes had been loosened, the experts concluded that some human agency untied the gas train to allow an uninterrupted flow of gas into defendant's apartment.

The experts could not, however, explain how the gas had been ignited. They discounted possible sources of ignition, such as the presence of static electricity or the arc generated by a light switch, as unlikely in a residential setting.

The prosecution's experts also opined that the pattern of blast debris and the fact that the explosion flowed in an omnidirectional movement from the center established that the explosion originated in defendant's apartment. Further, defendant's lack of blast-related injuries strongly suggested that he was present at the epicenter of the explosion. Prosecution experts testified that following an explosion, a propagation wave becomes stronger as it leaves the point of ignition. Thus, a person located at the source of ignition has a greater chance of survival than someone who is located further away.

Other evidence revealed that defendant left a note on the apartment door warning Ms. Russell not to turn on any type of switch. Defendant also admitted to the police that he knew about gas appliances because he had worked in an appliance store. Finally, defendant falsely told police that he had unplugged appliances and tightened the gas union in the water heater/furnace area and shut down the gas line when he smelled gas, contrary to the physical evidence that the gas pipes had been loosened. The prosecution relied on this evidence to establish that defendant was the individual who tampered with the gas pipes.

II. COURT OF APPEALS ANALYSIS

In reversing, the Court of Appeals majority found "[w]hat is missing is sufficient evidence to establish that the ignition of the gas was the result of an intentional act on defendant's part." Unpublished opinion per curiam, issued October 9, 1998 (Docket No. 196655), slip op, p 5. The majority noted that the prosecution experts could not determine the exact source of ignition. The majority assumed that defendant had deliberately filled his apartment with gas, but held that the evidence did not establish that defendant specifically intended to *ignite* the gas. An equally possible explanation was that defendant merely intended to asphyxiate himself. Accordingly, the panel majority found the proof insufficient.

In dissent, Judge GRIFFIN accused the majority of usurping the jury's role as trier of fact. He noted that the prosecution's experts characterized defendant's theories of accident as improbable. Judge GRIFFIN observed that the prosecutor was not required to negate every reasonable theory consistent with innocence. In his view, a reasonable juror could conclude that one who purposefully fills his apartment with natural gas intends an explosion to occur. He adopted the trial court's reasoning: one who loosens gas pipes and releases a quantity of gas intends the natural results thereof, i.e., an explosion or fire. Although static electricity possibly could have been the source of the ignition, the evidence supported the reasonable inference that defendant had purposefully created conditions from which an explosion and fire was a natural and probable consequence. Thus, the jury's verdicts were not irrational.

Judge GRIFFIN cited the following evidence:

> (1) [D]efendant deliberately filled his apartment with nat-
> ural gas by loosening the gas pipe at its union, (2) the fire
> and explosion were caused by the ignition of the gas
> buildup, (3) defendant, as a former employee of an appli-
> ance store, was knowledgeable of the functioning of gas
> appliances, (4) defendant had a history of suicide attempts
> and expressed his intent to kill himself less than a week
> before the explosion, vowing that "nobody would catch him
> this time," (5) defendant's lack of "blast-related injuries"
> indicated that defendant was located at or near the origin
> of the ignition, (6) accidental ignition from static electricity
> (in a nonindustrial setting) or from an arc caused by a light
> switch or an appliance was very unlikely, and (7) defend-
> ant's note on his front door warning his girlfriend revealed
> defendant's knowledge of the danger and potential for the
> explosion that ultimately occurred (negating defendant's
> claim of accident or mistake). [Slip op, p 3.]

We granted the prosecution's application for leave
to appeal. 459 Mich 1002 (1999).

### III. STANDARD OF REVIEW

The test for determining the sufficiency of evidence
in a criminal case is whether the evidence, viewed in
a light most favorable to the people, would warrant a
reasonable juror in finding guilt beyond a reasonable
doubt. *People v Hampton*, 407 Mich 354; 285 NW2d
284 (1979); *Jackson v Virginia*, 443 US 307; 99 S Ct
2781; 61 L Ed 2d 560 (1979). *People v Wolfe*, 440 Mich
508, 515; 489 NW2d 748 (1992), articulated the gov-
erning standard for reviewing sufficiency claims:

> [W]hen determining whether sufficient evidence has been
> presented to sustain a conviction, a court must view the
> evidence in a light most favorable to the prosecution and
> determine whether any rational trier of fact could have

found that the essential elements of the crime were proven beyond a reasonable doubt.

The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

We once again caution reviewing courts that the prosecutor need not negate every reasonable theory consistent with innocence. *People v Konrad*, 449 Mich 263, 273, n 6; 536 NW2d 517 (1995). Instead, the prosecution is bound to prove the elements of the crime beyond a reasonable doubt. It is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury "in the face of whatever contradictory evidence the defendant may provide." *Id.*

### IV. SUFFICIENCY ANALYSIS

Because this offense occurred in January 1995, before the April 1, 1996, effective date of the amendments in 1996 PA 20, § 1, now codified as MCL 750.316(2)(a); MSA 28.548(2)(a), we must analyze the sufficiency of proof of common-law arson underlying the felony murder charge, rather than statutory arson. In *People v Reeves*, 448 Mich 1, 3-4; 528 NW2d 160 (1995), we held that "the word 'arson' in the felony murder statute refers to the common-law crime of arson, that is, the malicious and voluntary or wilful

burning of a dwelling house of another." This Court reviewed the history of the felony murder statute and concluded that the Legislature intended to retain the common-law definition of arson in the felony murder statute. In apparent response to *Reeves*, the Legislature amended the felony murder statute to provide that statutory, not common-law, arson is the relevant offense in felony murder cases. See 1996 PA 20, now codified as MCL 750.316(2)(a); MSA 28.548(2)(a).

*People v Carines, supra*, pp 758-759, recited the elements of felony murder:

> "The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute, including (arson)]." [Citation and internal quotations omitted.]

"The facts and circumstances of the killing may give rise to an inference of malice. A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *Id.*, p 759 (citations omitted).

The prosecution presented sufficient evidence of the elements of felony murder. Uncontested evidence established that two human beings died in the explosion, thereby satisfying the first element. Regarding the second element, the jury could infer that defendant acted with malice when he intentionally set in motion a force likely to cause death or great bodily harm. As discussed below, the circumstantial evidence and reasonable inferences therefrom indicated

that defendant intentionally released and ignited gas in his apartment building. Defendant thereby created a very high risk of death or great bodily harm, and the jury could infer from defendant's actions that he knew that death or such harm was the likely result.

The third element of felony murder is satisfied because defendant committed the crime of arson. *People v Reeves, supra,* pp 3-4, defined common-law arson as "the malicious and voluntary or wilful burning of a dwelling house of another."

We note preliminarily that the trial court, without objection, instructed the jury in accord with CJI2d 31.2(4), which states that the defendant must have "intended to set a fire, knowing that this would cause injury or damage to another person or to property." We hold that the evidence was sufficient to establish the elevated level of intent required by the standard instruction.[1]

In arson cases, the trier of fact usually draws inferences from circumstantial evidence:

> [T]here is rarely direct evidence of the actual lighting of a fire by an arsonist; rather, the evidence of arson is usually circumstantial. Such evidence is often of a negative character; that is, the criminal agency is shown by the absence of circumstances, conditions, and surroundings indicating that

---

[1] We do not suggest that the trial court's instructions are dispositive when reviewing sufficiency of the evidence claims. Normally, an appellate court identifies the elements of the crime and assesses whether the evidence presented at trial, taken in the light most favorable to the prosecutor, satisfied those elements. In this case, however, the prosecution satisfied the heightened intent requirement of CJI2d 31.2(4). As discussed below, the jury instruction wrongly created an elevated intent requirement to prove common-law arson that is not found in the common law. We take the opportunity in the next section of this opinion to clarify the mental state needed to prove common-law arson.

the fire resulted from an accidental cause. [*Fox v State*, 179
Ind App 267, 277; 384 NE2d 1159 (1979).][2]

It is beyond dispute that the "dwelling house of
another" was burned. Thus, the only remaining ques-
tion is whether defendant maliciously and voluntarily
or wilfully caused the burning.

The evidence supported a reasonable inference that
defendant intentionally caused the explosion and
resulting fire. Defendant had threatened to kill him-
self the previous day and the previous week. A
rational jury could infer that defendant deliberately
released gas into his apartment by loosening the
union of the gas pipe. Further, defendant was present
at the point of ignition because he suffered no blast-
related injuries.

The circumstantial evidence that defendant was
located at the source of the ignition is particularly
persuasive. The expert testimony concerning the
properties of propagation waves supported a rational

---

[2] See also *People v Horowitz*, 37 Mich App 151, 154; 194 NW2d 375
(1971), in which our Court of Appeals stated:

It is the nature of the offense of arson that it is usually commit-
ted surreptitiously. Rare is the occasion when eyewitnesses will be
available. By necessity, proofs will normally be circumstantial.

In *Horowitz*, the Court of Appeals rejected the defendant's claim that
the jury had piled inference upon inference:

"The rule is not that an inference, no matter how reasonable, is
to be rejected if it, in turn, depends upon another reasonable infer-
ence; rather the question is merely whether the total evidence,
including reasonable inferences, when put together is sufficient to
warrant a jury to conclude that defendant is guilty beyond a rea-
sonable doubt. If enough pieces of a jigsaw puzzle fit together the
subject may be identified even though some pieces are lacking."
[*Id.*, p 155, quoting *Dirring v United States*, 328 F2d 512, 515 (CA
1, 1964).]

jury determination that defendant ignited the gas. The Court of Appeals majority completely overlooked this evidence.

The evidence also supports the reasonable inference that defendant ignited the gas in an effort to kill himself quickly. When threatening to kill himself, defendant told Russell that no one would catch him this time. A rational juror could infer that defendant intended to take his life quickly to avoid being stopped. Igniting the gas obviously provided a quicker method of demise than asphyxiation. As a former appliance store employee, defendant certainly knew the dangers of a gas explosion. Indeed, defendant specifically cautioned Russell not to turn on any switches.

A reviewing court must consider the evidentiary facts not in isolation, but in conjunction with one another, in a light most favorable to the prosecution. Taken together in this light, the evidence supports a reasonable inference that defendant intentionally released the gas in his apartment and ignited it.

### V. INTENT REQUIREMENT FOR COMMON-LAW ARSON

We now turn to the mental state required for common-law arson.[3] Under the common law, the act of purposefully creating conditions that cause a dwelling to burn satisfies the elements of arson. The Court of

---

[3] We acknowledge that this question is not squarely before us, given our conclusion that the evidence was sufficient under the heightened intent requirement of CJI2d 31.2(4). We nonetheless address the intent requirement of common-law arson because we have no other method of suggesting corrections to misstatements in the standard instruction.

Appeals majority posited that common-law arson requires proof of an intentional act of ignition on the implicit assumption that common-law arson is a specific intent crime. The Court of Appeals may have relied for that mistaken view on CJI2d 31.2(4). That instruction states that arson requires proof that the defendant "intended to set a fire, knowing that this would cause injury or damage to another person or to property." A footnote to the instruction also refers to arson as a specific intent crime, without distinguishing various statutory offenses with specific intent components from common-law arson.

CJI2d 31.2 does not accurately reflect Michigan law regarding common-law arson. No Michigan case has ever held that common-law arson is a specific intent crime. Accordingly, the cases cited in the commentary to CJI2d 31.2 in support of the specific intent instruction are inapposite for purposes of analyzing common-law arson. For example, in *People v McCarty*, 303 Mich 629; 6 NW2d 919 (1942), the defendant was convicted of the statutory offense of wilfully burning insured personal property with the intent to injure and defraud the insurer, 1931 PA 328, § 75, now codified at MCL 750.75; MSA 28.270. Obviously, the statutory language at issue in *McCarty* included a specific intent requirement. But *McCarty* never held that common-law arson is a specific intent crime.

"[T]he distinction between specific intent and general intent crimes is that the former involve a particular criminal intent beyond the act done, while the latter involve merely the intent to do the physical act." *People v Beaudin*, 417 Mich 570, 573-574; 339 NW2d

461 (1983).[4] Because virtually every reported Michigan case involves a statutory arson offense, see *Reeves, supra,* our cases do not discuss common-law arson.

Const 1963, art 3, § 7 states: "The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed." Thus, to the extent that it is consistent with our state and federal constitutions and statutes, the common law has been adopted into our jurisprudence. *In re Lamphere,* 61 Mich 105, 108; 27 NW 882 (1886); *Lorman v Benson,* 8 Mich 18 (1860); *Stout v Keyes,* 2 Doug 184 (Mich, 1845).

Common-law arson is a general intent crime. "[T]he enduring common law definition of the mental element of" arson is that the burning be done "maliciously and voluntarily." Poulos, *The metamorphosis of the law of arson,* 51 Mo L R 295, 319 (1986). A malicious burning occurs when the defendant "either intentionally or wantonly burns property without justification or excuse." *Id.,* p 403. Wanton arson "required an intentional act which created a very high risk of burning a dwelling house, which risk was known by the actor and disregarded when the actor performed the risk taking act." *Id.,* p 408. "[T]he word 'willfully' adds nothing to the common law concept of malice . . . ." *Id.,* p 404.

---

[4] Many courts and commentators have criticized the general intent/specific intent distinction as confusing and unworkable. See *People v Langworthy,* 416 Mich 630, 639-640, 653; 331 NW2d 171 (1982), and authorities cited therein. Nonetheless, this Court in *Langworthy* declined to abolish or modify the longstanding dichotomy. *Id.,* pp 641, 653. We likewise refuse to abandon a concept that is so deeply rooted in our state's criminal jurisprudence.

The common law defines arson as the performance of any act resulting in the burning of a dwelling house that was done with malice. Perkins, Criminal Law (2d ed), ch 3, § 2, pp 216-219. Common-law malice requires either: 1) an actual intent to commit the actus reus, *or* 2) an intent to act with a heedless disregard that the prohibited harm is a plain and strong likelihood. *Id.*, ch 7, § 4, pp 766-768, and n 25.

> Arson, in the common-law sense, usually results from a deliberate intent to burn the dwelling of another and without doubt this intent was at one time assumed to be an ingredient of the crime, which explains the use of the word "voluntary" or "wilful," as mentioned above, in many of the definitions. Either word, however, lost all meaning in this definition when it became established that by fiction an intent to burn might be recognized in law when it did not exist in fact. Thus Lord Coke, writing in the early 1600's said that the "law doth sometime imply, that the house was burnt maliciously and voluntarily," giving as an illustration the instance of a fire spreading and causing damage beyond that actually intended. It is not common-law arson for a dweller to burn his own dwelling, and this has given rise to the outstanding example of unintentional arson; for if such a fire obviously creates an unreasonable fire hazard for other nearby dwellings, and any of these is actually burned, common-law arson has been committed even if the wrongdoer did not actually intend the consequence and may have hoped it would not happen. An intentional act creating an obvious fire hazard to the dwelling of another, done without justification, excuse or mitigation, might well be characterized as "wilful" (a word of many meanings), and would certainly be malicious, but as the law has developed it is a mistake to assume that the phrase "wilful and malicious," when found in the definition of common-law arson, adds some distinct requirement not included in the word "malicious" alone. [*Id.*, ch 3, § 2, pp 217-218.]

4 Blackstone, Commentaries on the Laws of England 222 (1769), states that common-law arson requires a *malicious* burning. Blackstone stated:

> As to what shall be said a *burning*, so as to amount to arson: a bare intent, or attempt to do it, by actually setting fire to a house, unless it absolutely *burns*, does not fall within the description of *incendit et combuffit*; which were words necessary, in the days of law-latin, to all indictments of this sort. But the burning and consuming of any part is sufficient; though the fire be afterwards extinguished. Also it must be a *malicious* burning; otherwise it is only a trespass: and therefore no negligence or mischance amounts to it. [*Id.*]

See also *United States v Acevedo-Velez*, 17 MJ 1, 2-3 (1983).

We have previously discussed the definition of malice in the context of murder. The "malice" required to prove murder requires either: 1) an intent to kill, 2) an intent to cause great bodily harm, *or* 3) wanton and wilful disregard that the natural tendency of the defendant's behavior is to cause death or great bodily harm. *People v Aaron*, 409 Mich 672, 714; 299 NW2d 304 (1980). The same level of criminal culpability exists regardless whether a defendant wantonly and wilfully disregards the consequences of his actions or intends to cause the prohibited harm.

Like murder, common-law arson is a crime against the person and manifests a contempt for human life. 3 Torcia, Wharton's Criminal Law (15th ed), § 334, pp 325-326, and n 5, citing *State v McGowan*, 20 Conn 245 (1850). We thus treat arson no differently than murder for purposes of defining malice. Accordingly, the required mental state for arson is either: 1) an intent to burn the dwelling house of another, or 2)

doing an act in circumstances where a plain and strong likelihood of such a burning exists. Perkins, *supra*, ch 3, § 2, pp 219-220.[5]

Proof of common-law arson does not require a specific intent to cause injury to a particular person or damage to particular property. To establish that a defendant acted wilfully or maliciously and voluntarily, the prosecution must prove one of the following: 1) that the defendant intended to do the physical act constituting the actus reus of arson, i.e., starting a fire or doing an act that results in the starting of a fire (intentional arson); or 2) that the defendant intentionally committed an act that created a very high risk of burning a dwelling house, and that, while committing the act, the defendant knew of the risk and disregarded it (wanton arson).

The first type of malice should not be confused with a specific intent requirement. The discussion in *People v Langworthy*, 416 Mich 630; 331 NW2d 171 (1982), of malice in the murder context provides a useful analogy. While the intent to kill and the intent to cause great bodily harm "sound suspiciously akin to the traditional language of specific intent," *Lang-*

---

[5] Foreign authorities also persuade us that common-law arson is a general intent crime that requires proof of either an intentional or a wanton act. See, e.g., *State v Scott*, 118 Ariz 383, 385; 576 P2d 1383 (Ariz App, 1978); *United States v Acevedo-Velez, supra*; *DeBettencourt v State*, 48 Md App 522, 525; 428 A2d 479 (1981); *Linehan v State*, 442 So 2d 244 (Fla App, 1983); *State v Nelson*, 17 Wash App 66, 69; 561 P2d 1093 (1977) ("At common law, specific intent to burn a particular thing or to injure a particular person was unnecessary, it being sufficient to show that there was a general malice or intent to burn some structure"); *Mai v People*, 224 Ill 414; 79 NE 633 (1906); *State v Doyon*, 416 A2d 130, 135 (RI, 1980) ("We adhere, therefore, to the common-law mandate that the mental state for the crime of arson requires only that the defendant intended to do the proscribed act, that it was done unlawfully, and that it was not done inadvertently"); *People v Tanner*, 95 Cal App 3d 948; 157 Cal Rptr 465 (1979).

*worthy*, p 651, neither intent is a necessary element of second-degree murder. "[A] wanton and willful disregard of the likelihood that the natural tendency of a person's behavior is to cause death or great bodily harm may also satisfy the malice requirement." *Id.*, pp 650-651.

Similarly, while an "intent to start a fire" may sound like the language of specific intent, this intent is simply one possible means of proving malice in an arson case. Such an intent is *not* a necessary element of arson. The wilful and wanton commission of an act that creates a very high risk of burning a dwelling house is an alternative method of proving malice.

### VI. CONCLUSION

The prosecution presented sufficient evidence of common-law arson underlying the murders in this case. This evidence established the elevated level of intent required by CJI2d 31.2(4). Nonetheless, common-law arson is a general intent crime. Accordingly, we vacate the judgment of the Court of Appeals and reinstate defendant's convictions of felony murder.

WEAVER, C.J., and TAYLOR, YOUNG, and MARKMAN, JJ., concurred with CORRIGAN, J.

CAVANAGH, J. I concur with the majority's determination that the defendant's felony-murder convictions should be reinstated. Further, I agree with the majority that arson is a general intent crime rather than a specific intent crime, and that CJI2d 31.2(4) is misleading. I write separately, however, because I disagree with the majority's conclusion that there was

sufficient evidence to prove that the defendant intended to ignite the fumes in his apartment.

When faced with a sufficiency of the evidence challenge, an appellate court must view the evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994). In felony-murder cases, courts consider both whether murder has been committed and whether an underlying, enumerated felony has been committed. See, generally, *People v Aaron*, 409 Mich 672; 299 NW2d 304 (1980). I agree with the majority that, in order to convict a defendant of felony murder, it must be shown that (1) he killed a human being, (2) that he acted with the intent to kill, the intent to inflict great bodily harm, or with a wanton and wilful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm, and (3) that the killing occurred while the defendant was committing, attempting to commit, or assisting with the commission of an underlying felony. *Ante* at 401-402.

The first element in a felony-murder charge is a " 'killing of a human being.' " *Id.* at 401. Here, it is undisputed that two human beings were killed. The second element of a felony-murder charge is whether the defendant possessed the requisite mens rea for murder. I would hold that the defendant possessed the requisite mens rea because, by filling his apartment with gas fumes, he created a very high risk of death or great bodily harm with the knowledge that death or great bodily harm was the result.

The defendant argues that, even if it can be shown that he allowed gas fumes to fill his apartment, he was attempting only to commit suicide. As such, he did not possess the requisite intent for the crime of murder. I disagree. The defendant's experiences working in an appliance store provided him with knowledge about the dangerous properties of gas fumes. Further, the defendant left a note on the door advising his former girlfriend not to turn on any switches. Arguably, the defendant's note illustrates an attempt to prevent an explosion. However, even under such an assumption, the note also illustrates the defendant's knowledge that there was a high risk of a dangerous explosion that could cause death or great bodily harm. When taken in a light most favorable to the prosecution, the evidence supports a rational finding by the trier of fact that the defendant possessed the mens rea necessary for murder. Therefore, it becomes necessary to examine whether the defendant committed a statutorily enumerated underlying felony.

The underlying felony in the present case is arson. I agree with the majority that this Court must examine the common-law definition of arson in order to resolve the sufficiency challenge. Thus, we are bound to determine whether the defendant wilfully or maliciously and voluntarily burned the dwelling house of another. *People v Reeves*, 448 Mich 1, 3-4; 528 NW2d 160 (1995). I further agree with the majority that the mens rea necessary for arson can be established either by proving (1) that the defendant intended to commit the actus reus, or (2) by proving that the defendant intentionally committed an act that created a very high risk of burning a dwelling house. *Ante* at 409. Michigan law defines malice as "an intent to

cause the very harm that results or some harm of the same general nature, or an act done in wanton or wilful disregard of the plain and strong likelihood that some such harm will result." *People v Hansen*, 368 Mich 344, 350; 118 NW2d 422 (1962). Unlike the majority, however, I would not conclude that the defendant intentionally ignited the fumes in his apartment. Rather, I would hold that the defendant intended to fill his apartment with gas fumes, and that the act of releasing the fumes created a very high risk of harm of burning a dwelling house.

When reviewing the sufficiency challenge in the present case, the Court of Appeals was unpersuaded that the defendant intentionally ignited the gas fumes in his apartment. Instead, the Court opined that, while a jury could have rationally concluded that the defendant purposefully filled his apartment with the gas, the jury could not have rationally concluded that the defendant intended to ignite the fumes. The Court then reversed the defendant's conviction, holding that the defendant did not possess the specific intent required for the arson underlying the felony-murder charge. Conversely, the majority opines that the Court of Appeals erred by treating arson as a specific intent crime rather than a general intent crime, and by concluding that there was insufficient evidence of intentional ignition. *Ante* at 395, 398.

I agree with the majority that there was a flaw in the Court of Appeals determination that a specific intent to burn was required. However, I decline to join the majority because our determination that common-law arson is a general intent crime makes it unnecessary to resolve the dispute over whether the defendant intentionally ignited the fumes in his apart-

ment. I agree with the Court of Appeals that, viewed in a light most favorable to the prosecution, the expert testimony established: "(1) that defendant purposefully filled his apartment with natural gas; (2) that the explosion and fire were caused by the ignition of the gas build-up; and (3) that the explosion originated in defendant's apartment." Unpublished opinion per curiam, issued October 9, 1998 (Docket No. 196655). When the Court of Appeals conclusions are examined in a general intent framework, the defendant's convictions must be reinstated. I would conclude that the defendant acted in wanton or wilful disregard of the plain and strong likelihood that the burning of another's dwelling house was likely to result from his decision to fill his apartment with gas fumes. Because the defendant acted "maliciously and voluntarily," and because the evidence demonstrates that the defendant committed the underlying arson even if he did not act intentionally, I find it unnecessary to speculate about whether the fumes were intentionally ignited.

KELLY, J., concurred with CAVANAGH, J.