# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 9, 2014

Plaintiff-Appellee,

v

No. 316750
Grand Traverse Circuit Court

GARY RICHARD LEAF,

LC No. 13-011533-FH

Defendant-Appellant.

Before: MURPHY, C.J., and SAWYER and M.J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of possession of a controlled substance less than 25 grams (cocaine), MCL 333.7403(2)(a)(*v*), and operating a motor vehicle while license suspended, second offense, MCL 257.904. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 14 months to 5 years' imprisonment for the drug conviction and time served for the suspended license conviction. We affirm.

On February 18, 2013, a tip alerted police to a possible drug transaction involving a male in a red pickup truck and two females in a black SUV that was occurring in the parking lot of a local shopping mall. A police officer responded to the scene and noticed that the pickup truck was exiting the mall's parking lot. The officer maneuvered his cruiser behind the truck and began following it. The officer noticed that the driver, defendant, kept looking in his rearview mirror, ostensibly keeping an eye on the officer's movements. After defendant made an extremely abrupt turn, the officer activated his overhead lights and attempted to pull defendant over. Defendant, however, initially failed to stop and continued driving until he finally pulled over next to a snow bank behind a restaurant, after first swerving to miss the snow bank. The police officer testified that defendant immediately proceeded to get out of his vehicle, at which point the officer ordered him back into the pickup truck. Defendant complied, but was then evasive in answering questions posed by the officer. According to the officer, defendant told him that he had met his wife at the shopping mall but could not recall the type of vehicle his wife was driving or its color. Defendant testified that he had been at the mall to meet his wife in order to give her money for a doctor's visit. Defendant asserted that all he did at the shopping mall was give his wife the money and that he then left the premises.

The police officer determined that defendant was driving on a suspended driver's license, and he was thus placed under arrest. The officer testified that a search revealed that defendant

-1-

had a large amount of cash in a pants pocket, along with a "used or burnt Chore Boy." In defendant's testimony, he admitted that he had been in possession of the Chore Boy. The officer explained that a Chore Boy is a dish scrubber that consists of copper wire that can be rolled up and used as a filter for smoking crack cocaine or methamphetamine, thereby preventing the rock of crack or meth from being inhaled by the user. According to the officer, both the Chore Boy and the large amount of cash found on defendant were indicative of drug trafficking. The officer testified that inside defendant's truck there was a cigarette lighter, another Chore Boy, and the corner of a plastic bag that had been tied in a knot and snipped at both ends, which was also common narcotic paraphernalia and consistent with the drug trade.

A second police officer who had responded to the scene discovered a homemade pipe near the snow bank. This officer testified that the pipe was in a "slushy" patch of snow, but it appeared "fresh" because it was on top of the snow pack. The officer opined that the pipe had not been there for days or even hours. Defendant denied throwing anything out of his truck and denied ownership or possession of the pipe.

A third responding police officer found a small container near the snow bank that contained what was later determined to be crack cocaine. When asked about the container's condition, the officer testified that it was "[c]lean looking, undisturbed, there was no mud and snow and water, [or] anything on it[.]" Defendant testified that he did not throw the container on the ground, and he denied that the cocaine belonged to him.

A police narcotics dog alerted to the scent of drugs in and around defendant's truck and on the money found in defendant's pocket. A black SUV matching the description of the other vehicle identified at the shopping mall was located and being driven by defendant's wife. She had a large amount of pills, cash, ripped plastic baggies, a Chore Boy, and crack cocaine in her possession. Defendant's wife was also arrested.

Pursuant to a condition of defendant's bond, a urine sample was collected on February 22, 2013, four days after the incident. Defendant's urine tested positive for cocaine metabolites. There was testimony that cocaine typically stays in the body two to three days but can stay in the body of a chronic user up to 22 days. Defendant testified that he had used cocaine in the past, which explained the presence of the Chore Boys and the positive drug test, but he denied using or possessing cocaine on the day of his arrest.

Defendant argues on appeal that the evidence was insufficient to support the cocaine possession conviction, given the lack of evidence showing knowledge and possession of the cocaine. Defendant maintains that there was inadequate evidence to link him to the container of cocaine found near his vehicle and the snow bank; he was merely present at a location where the cocaine was found.

We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646

NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). "It is for the trier of fact . . . to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded to the inferences." *Hardiman*, 466 Mich at 428. The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

With respect to the cocaine possession charge, the prosecutor was required to establish beyond a reasonable doubt that defendant knowingly or intentionally possessed cocaine in an amount less than 25 grams. MCL 333.7403(1); MCL 333.7403(2)(a)(*v*); MCL 333.7214(a)(*iv*); M Crim JI 12.5; *Wolfe*, 440 Mich at 516-517. Possession can be "actual or constructive," and the defendant need not be "the owner of recovered narcotics." *Id.* at 520. "It is well established that a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession." *Id.* Rather, some additional connection must be shown to have existed between the drugs and the defendant. *Id.*

We hold that there was sufficient evidence to sustain the cocaine possession conviction. A reasonable inference arising from the evidence was that defendant actually possessed the cocaine and then discarded it shortly before being arrested. The drug paraphernalia, the large amount of cash carried by defendant, the detection of the scent of drugs by the narcotics canine relative to the pickup truck and money, the apprehension of defendant's wife while driving the black SUV and the drugs and drug paraphernalia found on her, the circumstances surrounding the pursuit of defendant's truck, defendant's evasive answers to the officer's questions, the location of the cocaine near defendant's truck and the snow bank, the condition of the container that held the cocaine, and the testimony opining that the cocaine had been discarded close in time to defendant's arrest, when considered in total, easily supported a conclusion that defendant knowingly and intentionally possessed the cocaine. There was clearly a link between defendant and the cocaine under the totality of the circumstances. Reversal is unwarranted.

Defendant additionally argues that the positive test result based on the urine sample taken as a condition of bond was improperly admitted at trial, where it was obtained without a warrant in violation of his Fourth Amendment rights, and where the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, MRE 403. We review a trial court's decision to admit evidence for an abuse of discretion; however, underlying or preliminary questions of law, such as whether a constitutional provision or rule of evidence bars admission, are reviewed de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

We decline to substantively address this argument, considering that, assuming error in admitting the challenged evidence, the error was not structural, and it was harmless for purposes of MRE 403 and harmless beyond a reasonable doubt for purposes of the Fourth Amendment argument. See MCL 769.26 (unless an error resulted in a miscarriage of justice, a verdict shall

not be set aside or reversed); *People v Shepherd*, 472 Mich 343, 347; 697 NW2d 144 (2005) (if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the alleged error, a constitutional error is harmless); *Lukity*, 460 Mich at 495 (preserved, nonconstitutional error calls for reversal only when the error is prejudicial, i.e., when it is more probable than not that a different outcome would have resulted but for the error); *People v Anderson* (*After Remand*), 446 Mich 392, 406; 521 NW2d 538 (1994) (reviewing structural errors that defy harmless-error analysis).

We are confident that a rational jury would still have convicted defendant absent the urine-sample evidence given all of the evidence of guilt recited by us above in support of our holding rejecting defendant's sufficiency argument. Note that we did not rely on the evidence regarding the urine sample when analyzing and resolving the sufficiency argument. Under the totality of the circumstances, it is virtually inconceivable that the cocaine just happened to be in a spot where defendant was stopped and arrested and that it had been left or placed there by someone other than defendant. Further, defendant himself argues that the positive drug test was not relevant to linking the cocaine to defendant, undermining a claim of prejudice. Moreover, defendant testified to his use of cocaine prior to the day of his arrest when questioned about why he had a Chore Boy in his possession, and it is not entirely clear that he would not have so testified even had the trial court excluded the evidence concerning defendant's positive urine sample. In sum, reversal is simply not warranted.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Michael J. Kelly

-4-