*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARK WILLIAM FRUTCHEY,

Defendant-Appellant.

UNPUBLISHED
April 24, 2025
12:06 PM

No. 372533
Genesee Circuit Court
LC No. 23-051361-FH

Before: BOONSTRA, P.J., and LETICA and RICK, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the circuit court's order denying his motion to quash the district court's order binding him over for trial in the circuit court. Defendant was charged with two counts of making a terrorist threat, MCL 750.543m(1)(a), and two counts of using a computer to commit a crime, MCL 752.796; MCL 752.797(3)(f). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's charges are based on two emails he sent to the office of the Genesee County Prosecuting Attorney in 2022, in which he accused county employees, including prosecutor David Leyton, of corruption. In the first email, defendant stated that he would be "living" at the prosecutor's office until he received answers to his questions, and further stated:

> I WILL GET JUSTICE, OR BE MARTYRED BY DAVID LEYTON & THE REST OF THE LAW ENFORCEMENT COMMUNITY WHO THINK THEY CAN DO WHATEVER THEY WANT AND GET AWAY WITH IT BECAUSE DAVID LEYTON IS A CORRUPT FASCIST PIG!

---

[1] See *People v Frutchey*, unpublished order of the Court of Appeals, entered October 25, 2024 (Docket No. 372533).

-1-

FLINT MICHIGAN WILL NOT IGNORE MARK FRUTCHEY ANY
LONGER!

DAVID LEYTON WORKS FOR MARK WILLIAM FRUTCHEY AND
HE WILL ANSWER MY QUESTIONS 1 WAY OR ANOTHER!

In the second email, defendant stated that he would appear at the Flint City Council meeting on January 18, 2023 to inform "all public employees" about the "fascist employees that only work for their friends [and] ignore the poor." Defendant further stated in relevant part:

ALL TAXPAYER FUNDED EMPLOYEES OF GENESEE COUNTY
MICHIGAN, [sic] WILL PAY FOR THEIR ACTIONS!

I WILL GET ANSWERS OR BE "MARTYRED" BY NAZI FASCIST
PIGS, WHO WORK FOR DAVID LEYTON!

Defendant was charged with two counts of violating MCL 750.543m(1)(a); the two counts of using a computer to commit a crime are premised on those charges. At his preliminary examination, an employee of the prosecutor's office testified to receiving the two emails upon which defendant's charges were based, and that she considered those emails, as well as other sent by defendant, to be threatening and intimidating. A detective with the Genesee County Sheriff's office testified that he spoke with defendant and that defendant confirmed he had sent the emails. The detective testified that defendant had stated that he did not mean the emails in a threatening manner, but merely meant that he was going to get answers. Defendant told the detective he used the phrase "martyred" to mean "to be murdered by the police," although he elaborated that he did not mean that he would do violence himself. Defendant never denied sending the emails but argued that his statements in the emails did not satisfy the elements of MCL 7540.543m(1)(a) because he had not threatened to commit a "violent felony." The district court disagreed and bound defendant over to the circuit court. Defendant moved the circuit court to quash the bindover, which the circuit court denied. This appeal followed.

## II. STANDARD OF REVIEW

We review a circuit court's decision on a motion to quash to determine whether the district court abused its discretion in its bindover decision. *People v Schurr*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365104); slip op at 8 n 4. "A trial court necessarily abuses its discretion when it makes an error of law." *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017). "When the district court decision addresses whether the alleged conduct falls within the scope of a penal statute, the issue presents a question of law that we review de novo"; similarly, "[t]his Court also reviews de novo the trial court's interpretation of the law related to the motion to quash." *People v Murawski*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365852); slip op at 3 (quotation marks and citation omitted). We review de novo the interpretation and application of statutes. *People v Comer*, 500 Mich 278, 287; 901 NW2d 553 (2017).

## III. ANALYSIS

Defendant argues that the district court erred by determining that probable cause existed to believe that defendant's conduct satisfied the elements of MCL 750.543m(1)(a). We disagree.

A preliminary examination requires the district court "to determine whether the evidence is sufficient to cause an individual marked by discreetness and caution to have a reasonable belief that the defendant is guilty as charged." *People v Gerhard*, 337 Mich App 680, 689; 976 NW2d 907 (2021), lv den ___ Mich ___; 967 NW2d 233 (2021). The question is not whether the defendant is guilty or innocent but, rather, whether there is "evidence on each element of the crime charged or evidence from which those elements may be inferred . . . ." *Id*. at 689-690. In other words, the proper inquiry is whether or not it would be impossible for a trier of fact to find that the elements have been met based on the evidence. See *id*. at 693-694.

MCL 750.543m provides in pertinent part:

> (1) A person is guilty of making a terrorist threat or of making a false report of terrorism if the person does either of the following:
>
> (a) Threatens to commit an act of terrorism and communicates the threat to any other person.

MCL 750.543b(a) defines an "[a]ct of terrorism" as

> a willful and deliberate act that is all of the following:
>
> (i) An act that would be a violent felony under the laws of this state, whether or not committed in this state.
>
> (ii) An act that the person knows or has reason to know is dangerous to human life.
>
> (iii) An act that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion.

A "violent felony" is in turn defined as

> a felony in which *an element is the use, attempted use, or threatened use of physical force against an individual*, or the use, attempted use, or threatened use of a harmful biological substance, a harmful biological device, a harmful chemical substance, a harmful chemical device, a harmful radioactive substance, a harmful radioactive device, an explosive device, or an incendiary device. [MCL 750.543b(h) (emphasis added).]

This Court has summarized the elements necessary to prove that a defendant has violated MCL 750.543m(1):

> [T]o demonstrate that a defendant is guilty of making a terrorist threat under MCL 750.543m(1), the prosecution must prove that the defendant (1) threatened to commit an act of terrorism and (2) communicated the threat to another person. An act of terrorism is a willful and deliberate act that (1) would be a violent felony under the laws of this state, (2) is an act that the defendant knows or has reason to know is dangerous to human life, and (3) is an act that is intended to intimidate or

-3-

coerce a civilian population or to influence or affect the conduct of government or a unit of government through intimidation or coercion. The prosecution is not required to prove that the defendant had the intent or the capability to actually carry out the threatened act of terrorism, but the prosecution must prove the defendant's general intent to communicate a true threat; that is, the "communication of a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," made with "an intent to 'intimidate or coerce.' " [*Byczek*, 337 Mich App at 185-186 (citations omitted).]

This Court has held that MCL 750.543m(1) only requires that a defendant have the "general intent to communicate a true threat." *Byczek*, 337 Mich App at 183-184; see also *People v Osantowski*, 274 Mich App 593, 603; 736 NW2d 289 (2007).

On appeal, defendant challenges the district court's finding that defendant had threatened to commit an act of terrorism—specifically, defendant argues that his statements in the emails did not threaten an act that would be a violent felony under the laws of Michigan. We therefore will not address the remaining elements of a violation of MCL 750.543m(1).

Under MCL 750.543b(h), the definition of a violent felony is essentially bifurcated into two broad categories of felonies. The first category includes those that require as an element the threatened, attempted, or actual use of physical force against a person. The second category includes those that require as an element the threatened, attempted, or actual use of various biological, chemical, radioactive, explosive, or incendiary devices. No evidence was presented that defendant's statements fell into the second category. But the prosecution argued, and argues on appeal, that defendant's statements about acting in a manner that would get him killed by police constituted a felony that requires as an element the threatened, attempted, or actual use of force. Defendant argues in response that his statements meant only that he believed he would be killed for asking questions and persisting in uncovering what he believed was rampant corruption in the Genesee County government.

Defendant's statements are open to multiple interpretations. Certainly, threatening to use or using violent force in the presence of law enforcement may cause them to respond with lethal force. See, e.g., *Schurr*, ___ Mich App at ___; slip op at 19 (discussing how police officers "cannot use deadly force in defense of self or to effect an arrest unless the officer reasonably believed that he or she was in great danger and that the use of deadly force was necessary"). It is also possible that defendant meant his statements as indicating that corrupt law enforcement officers or other government officials would kill him for continuing to seek the truth; after all, in his first email, defendant wrote that he would "get justice or be martyred by David Leyton & the rest of the law enforcement community *who think they can do whatever they want and get away with it*," while in the second email he wrote that he would "get answers or be 'martyred' by Nazi Fascist Pigs, who work for David Leyton." In other words, defendant's statements could be read as stating that he would be "martyred" not merely by police, but by police who believed they were above the law, or by "Nazi Fascist Pigs." If defendant believes that corrupt, fascist, or "Nazi" law enforcement officials want to silence his quest for the truth, then he may well have meant his statements to indicate that he would be killed for asking questions or speaking truth to power, as he argued below and on appeal.

In *Byczek*, 337 Mich App at 190, this Court held that the defendant's statements constituted a threat of an act of terrorism for purposes of MCL 750.543m. The defendant in *Byczek* phoned a sheriff's department and "indicated he was on the west coast but was on his way back to Michigan; that if he did not get the money owed to him, he was going to return to Michigan and 'take care of it himself[;] and that it was going to be hash tag Las Vegas.' " *Id.* at 177-178 (alteration in original).

This Court noted that "[l]ess than two weeks before the telephone call, a widely publicized shooting had occurred in Las Vegas." *Id.* at 178. However, the defendant "did not specifically mention the Las Vegas shooting, did not say that he was going to shoot anyone, did not indicate that he had a gun or other weapon, and did not state that he was angry with anyone." *Id.* at 179. The defendant was convicted of threatening an act of terrorism under MCL 750.543m. *Id.* at 181. On appeal, the defendant argued in pertinent part that there was insufficient evidence to convict him under MCL 750.543m because there was no evidence of him making a true threat. *Id.* at 181-182.

After noting the social media and cultural ways in which a hashtag was used, see *id.,* 187-188, this Court explained that the defendant's phrase about Las Vegas "could be used to mean different things; there is no one meaning," id. at 188. However, given that there had been a highly publicized mass shooting in Las Vegas shortly before the defendant's statement and that witnesses testified that defendant had told them that he had referenced the Las Vegas mass shooting, this Court determined that it was reasonable for a jury to conclude that the phrase was a reference to that event. *Id.* This Court determined that the phrase could constitute a threat of an act of terrorism despite being capable of being interpreted in several different ways:

> Schiavo testified that defendant said that if he did not get the money he believed he was owed, then it was "going to be hash tag Las Vegas." One plausible meaning of this statement is that defendant was threatening to copy the actions of the shooter in Las Vegas. *Clearly, shooting someone would be a violent felony under the laws of Michigan*, and such conduct was no doubt known to defendant to be dangerous to human life. [*Id.* at 188-190 (emphasis added).]

Given that the jury was permitted to draw reasonable inferences from evidence, this Court determined that the evidence was sufficient to support defendant's conviction under MCL 750.543m. *Id.* at 190.

Defendant's statements are sufficiently similar to those in *Byczek* to compel us to affirm defendant's bindover to circuit court. The statements did not explicitly threaten to commit a violent act, but a jury certainly could interpret the statements as a threat to commit violent acts in order to be killed by police, especially in light of defendant's statements that he would be going to the prosecutor's office and the Flint City Council meeting and refusing to leave until his demands were met. We note that defendant himself told a police detective that his definition of "martyred" meant doing something that would require police to kill him, although he denied intending to threaten a violent act. Defendant also stated that employees of Genesee County would "pay for their actions," which could be interpreted as a threat to do physical violence to them, although that again is not the only plausible interpretation. Accordingly, it would not be impossible for a trier of fact to hold that defendant's statements threatened to commit a violent felony; no more is

required for a bindover following a preliminary examination. See *Gerhard*, 337 Mich App at 693-694 (stating that the proper inquiry for a preliminary examination is whether or not it would be impossible for a trier of fact to find that the elements have been met based on the evidence).

Accordingly, the district court did not abuse its discretion by binding defendant over on the charges, and the circuit court did not err by denying defendant's motion to quash. *Schurr*, ___ Mich App at ___; slip op at 8 n 4. Whether the evidence presented at the preliminary examination, standing alone, would be sufficient to allow a jury to find that all of the elements of MCL 750.543m were proven beyond a reasonable doubt, is not before us. See, e.g., *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (stating that, although the prosecutor need not "disprove every theory consistent with innocence," it is required to "prove the elements of the crime beyond a reasonable doubt . . . in the face of whatever contradictory evidence the defendant may provide." (Quotation marks and citation omitted).

Affirmed.


/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Michelle M. Rick