*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERRY MCCLELLAN,

        Defendant-Appellant.

UNPUBLISHED
March 06, 2026
10:22 AM

No. 374105
Monroe Circuit Court
LC No. 23-247521-FH

Before: WALLACE, P.J., and GARRETT and ACKERMAN, JJ.

PER CURIAM.

After the victim obtained a personal protection order (PPO) against defendant, Terry McClellan, he contacted her by telephone, text message, and e-mail. McClellan appeals by right his jury-trial conviction of stalking, MCL 750.411h.[1] Because the evidence was sufficient to support his conviction, we affirm.

## I. FACTUAL BACKGROUND

McClellan had known the victim, RT, for at least 10 years and considered her a friend when she obtained a PPO against him on March 10, 2023. On March 25, 2023, RT received six text messages from McClellan, several of them referencing the PPO. One of the messages was sexually explicit. The following day, McClellan sent another text message to RT.

Toward the end of March 2023, McClellan sent RT an e-mail and three text messages. In one of the text messages, he stated that he had a semi-automatic rifle, an AR-15. After receiving that message, RT became nervous and scared that McClellan would hurt her. In one of the other text messages McClellan stated he sent a letter to the judge presiding over his PPO violation hearing apologizing for contacting RT. On April 23, 2023, McClellan e-mailed RT and expressed concern that he would go to jail for sending the e-mail. Three days later, he sent RT a text message

---

[1] The prosecution charged McClellan with aggravated stalking, MCL 750.411i, but the jury acquitted him of that charge and convicted him of the lesser-included offense of stalking.

referencing money that RT's fiancé owed him. Between March 12, 2023, and May 2, 2023, McClellan telephoned RT "hundreds" of times. McClellan's repeated phone calls, e-mails, and text messages made RT "scared to go anywhere," and she was unable to sleep.

McClellan testified on his own behalf at trial, claiming he did not send most of the text messages and e-mails. He maintained that RT initiated most of the contact between them. The jury convicted McClellan of stalking. He now appeals.

## II. ANALYSIS

McClellan argues that the evidence was insufficient to support his conviction. We review de novo a challenge to the sufficiency of the evidence, meaning we give no deference to the trial court's decision. *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024). We review the evidence in the light most favorable to the prosecution and determine whether it was sufficient to permit a rational trier of fact to find guilt beyond a reasonable doubt. *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Due process requires the prosecution to prove every element of an offense beyond a reasonable doubt. *People v Anderson*, 330 Mich App 189, 203; 946 NW2d 825 (2019). "Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020). "The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Id.* Because the jury, rather than an appellate court, observes the witnesses and hears their testimony, "an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses." *Id.*

The crime of stalking is "a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both." MCL 750.411h(2)(a). In order to convict a defendant of stalking, MCL 750.411h(1)(e) requires the prosecution to prove: (1) "a willful course of conduct," (2) "involving repeated or continuing harassment of another individual," (3) "that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested," and (4) "that actually cause[d] the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(1)(a) defines "course of conduct" as "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." "Harassment" is defined as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411h(1)(d). In addition, "unconsented contact" is "any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued." MCL 750.411h(1)(f). Unconsented contact includes contacting an individual by telephone, MCL 750.411h(1)(f)(*v*), and sending electronic communications to an individual, MCL 750.411h(1)(f)(*vi*).

[E]vidence that the defendant continued to engage in a course of conduct involving repeated unconsented contact with the victim after having been requested by the victim to discontinue the same or a different form of unconsented contact, and to refrain from any further unconsented contact with the victim, gives rise to a rebuttable presumption that the continuation of the course of conduct caused the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested. [MCL 750.411h(4).]

The prosecution presented sufficient evidence to establish that McClellan's actions constituted a willful course of conduct involving repeated or continuing harassment. RT told McClellan not to contact her and obtained a PPO against him. McClellan's text messages and e-mails sent to RT indicate he was aware of the PPO and RT's desire that he stop contacting her. On March 25, 2023, he asked RT "about getting the PPO dropped." In a text message sent toward the end of March 2023, he informed RT that he apologized to the judge who presided over his PPO violation hearing for contacting RT. Further, in an e-mail sent on April 23, 2023, McClellan stated he did not want to go to jail or get in trouble for sending the e-mail.

Nevertheless, McClellan continued to contact RT via text message, e-mail, and telephone, all of which qualify as forms of unconsented contact under MCL 750.411h(1)(f)(*v*) and (*vi*). Though McClellan claimed he did not send several of the text messages and e-mails, and RT initiated contact on several occasions, RT's testimony contradicted McClellan's testimony in that respect, and the jury chose to believe RT's testimony. We are "required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Nowack*, 462 Mich at 400.

McClellan contends that although his actions annoyed RT, they would not have caused a reasonable person to suffer emotional distress. "[T]he harassment required for a stalking conviction hinges, in part, on whether the conduct in question would cause a reasonable person to suffer emotional distress as that term is defined in the statute." *People v Eichler*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371360); slip op at 5. MCL 750.411h(1)(c) defines "emotional distress" as "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." "Significant mental suffering" means "a noticeably or measurably large amount of mental pain." *Eichler*, ___ Mich App ___; slip op at 6 (quotation marks and citations omitted).[2] In addition, "distress" means "subject to great strain or difficulties." *Id*. at ___; slip op at 6 (quotation marks, citations, and alteration omitted). Accordingly, "there must be sufficient evidence of conduct by defendant that would cause a reasonable person to suffer a noticeably or measurably large amount of mental pain or, to a noticeably or measurably large extent, to be subject to great mental strain or difficulties." *Id*. at ___; slip op at 6.

In one of McClellan's text messages sent to RT, he mentioned that he had an AR-15. Another text message was sexually explicit, and several of the messages were nonsensical. In

---

[2] The *Eichler* Court examined the meaning of "emotional distress" under the aggravated stalking statute, MCL 750.411i(1)(c). The definition of "emotional distress" is the same in both the stalking statute and the aggravated stalking statute. See MCL 750.411h(1)(c); MCL 750.411i(1)(c).

addition to those particularly concerning text messages, McClellan telephoned RT "hundreds" of times between March 12, 2023, and May 2, 2023. The overwhelming amount of unconsented contact and the troubling nature of some of the messages would cause a reasonable person "to be subject to great mental strain or difficulties." *Eichler*, ___ Mich App at ___; slip op at 5. Moreover, McClellan failed to rebut the statutory presumption that his continued efforts to contact RT after she obtained a PPO against him caused her "to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(4).

Further, the prosecution presented evidence that RT in fact experienced great mental strain or difficulties as a result of McClellan's conduct. She testified that she was "scared to go anywhere" and was unable to sleep. She also testified that, after receiving McClellan's message referencing the AR-15, she felt nervous and scared and was afraid she "might get hurt[.]" Accordingly, the prosecution presented sufficient evidence for the jury to conclude beyond a reasonable doubt that McClellan committed the crime of stalking.

Affirmed.

/s/ Randy J. Wallace
/s/ Kristina Robinson Garrett
/s/ Matthew S. Ackerman