# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 12, 2015

Plaintiff-Appellee,

v

No. 319019
Wayne Circuit Court
LC No. 11-012946-FC

SAIF AHMED ALGHATHIE,

Defendant-Appellant.

Before: MARKEY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of felon in possession of a firearm, MCL 750.224f, discharging a firearm in or at a building, MCL 750.234b, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to one year probation for the felon in possession of a firearm conviction, and discharging a firearm in or at a building conviction, and two years' imprisonment for the felony-firearm conviction. For the reasons set forth in this opinion, we affirm the convictions and sentences of defendant.

## I. BACKGROUND.

This appeal arises from events that occurred around 10:00 p.m. on November 9, 2011 at a Citgo gas station in Detroit. On that date and time defendant was working at the gas station. According to defendant, it was his first day of work.[1] Around 10:00 p.m., Vernon Davis, Justin Keys, Andrew Stultz, and Mario Daniel went to the Citgo gas station. Davis, Keys, and Stultz went into the gas station's convenience store, although it is unclear whether the men went into the store so Keys could get change for a $100 bill, for Davis to purchase water and cigarettes, or both. According to Davis and Keys, Daniel never went into the convenience store that night, he remained in Davis's car in the parking lot. However, on cross examination, Keys indicated that Daniel was also in the store.

---

[1] This statement was disputed by the alleged victims in this case who testified that they had previously seen defendant work at the Citgo gas station.

-1-

The events that occurred next were disputed at trial. At some point "behind" Davis, Keys and Stultz, a man in a black hooded sweatshirt, black sweatpants, and a white hat sitting "real low" on his face, entered the convenience store. After defendant informed Keys that he did not have change for the $100 bill, defendant pulled out a "long gun" and shot it inside the convenience store behind the bulletproof glass of the cashier's booth. According to Davis, defendant fired the shot while Davis was in the back of the store looking for a water to purchase. Next, according to Davis, he paid for his water and cigarettes, and he walked out of the gas station with Keys and Stultz following behind him.

Davis then contends that defendant ran out of the convenience store and began chasing after the man in the hooded sweatshirt. Davis continued with his testimony: "[Defendant] pointed the gun at the guy with the hood on, and [then Defendant] pointed [it] at us. So we was trying to tell [Keys] to hurry up to get in the car so we could leave. After we [were] just about to pull off, [Keys] shut the door, and [defendant] fired." According to Davis, defendant shot the back window out of Davis's car with a shotgun, but no one was injured.

Keys' version of events differs slightly from Davis's testimony. According to Keys, after defendant shot the gun inside the store, Keys and Stultz spoke to defendant calmly, asking him "[w]hy you shoot the gun?" Defendant responded to them in Arabic, which they could not understand. Keys and Stultz told defendant that they did not know the man in the black hooded sweatshirt and they did not come in with the man in the black hooded sweatshirt, explaining: "[a]fter that[,] [defendant] started getting like real jittery like nervous or something, you know, like he, he started shaking like he was nervous." When defendant got on the phone to call the police, Keys, Stultz, and Davis left the convenience store; Keys was the last to exit.

Keys explained that once he exited the store, he saw defendant and the man in the black hooded sweatshirt having a conversation in the store. Then, Keys saw the man in the black hooded sweatshirt "snatch some stuff and [run] out [of the convenience store]." It appeared to Keys that the man in the black hooded sweatshirt stole suckers "or something that was on the counter." After crossing the parking lot, Keys got into Davis's car, and when he closed the door, "at the same time, [he] hear[d] the boom," indicating that he heard the shot that took out the back windshield of Davis's car. Keys looked back out of the shattered windshield and saw defendant with a "long gun" pointed at the car. Keys, Davis, Stultz, and Daniel then drove away from the gas station.

Keys and Davis testified that they had seen defendant working in the store before, but that they had never had problems with him before this particular day. Davis testified that he and his friends did not steal anything from the store, they did not kick at the door to the cashier's station, they did not yell at defendant, they did not have weapons, and they did not threaten defendant.

Detroit Police Officer, Kevin Rambus, and his partner responded to the gas station following defendant's call. Davis, Keys, Stultz, and Daniel also called the police once they were a few blocks away. Rambus also received that call, so he and his partner left the gas station to respond to the call at Stansbury Street. At Stansbury Street, Rambus spoke with Keys who informed Rambus that he and his three friends went into the convenience store that night, and then a fifth man that they did not know entered after them. Keys told Rambus that this fifth man

was stealing, and defendant and this fifth man "had some words." Keys then told Rambus that they left the gas station, and as they left, defendant shot the window out of their car. Rambus also spoke with Davis and Daniels regarding the incident, both of whom corroborated the story that Keys relayed to Rambus.

After speaking with Keys, Davis, and Daniels, Rambus and his partner returned to the gas station to speak with defendant. Rambus found one shell casing inside the store, but he did not find a shell casing in the parking lot. Rambus also did not observe any glass in the parking lot. Rambus testified that he found evidence that a firearm discharged inside the store, but that he found no evidence that the firearm was fired outside the store.

Defendant testified regarding the events of that evening. Defendant's version of events was quite different. Defendant testified that this was his first day working at this convenience store, and he had not met any of the men he saw in the store prior to that day. Defendant testified that five men came into the gas station at once, and that they came in "loud and fast," that he was "a little bit nervous that day," and the five men coming in together "scare[d] the s*** out of [him]." When these five men entered, they started screaming at defendant and he testified that every man "went [in a] different direction," and "want[ed] [to] stand in [defendant's] face."

Defendant testified that one man kicked at the door of the safety glass surrounding the cashier's booth, so defendant picked up the gun that the owners of the store keep behind the counter. Defendant thought that the men would enter his safety glass cubicle, and that they would kill him. The gun was inside of a bag, so when defendant picked up the gun inside of the bag, he accidentally set it off, shooting towards the floor. Once defendant set off the gun by accident, "[e]verybody took everything they c[ould]" and left. Defendant admitted that none of the men threatened him, but when he "heard the door and everything grabbed, I was scared for myself."

Defendant testified that when the men were stealing from the store, he called 911. Defendant testified that he did not follow the men outside of the store, and he did not shoot the gun outside of the store. Defendant could not see the men once they ran out of the store because there is merchandise blocking the windows, so he did not describe the vehicle they were driving to police after the event.

Detroit Police Officer Stephen Petroff was sitting outside the courtroom at the 36th District Court where defendant had his preliminary examination in December 2011. Petroff saw Davis and Keys outside the courtroom that day and overheard a conversation between Davis and Keys, although he could not recall which man said what, he recalled that one man said "we're going to get paid out of this," and that both men were talking about defendant in a derogatory manner. Because of the content of the conversation that he overheard, Petroff sought out defendant's counsel to report the conversation. Davis and Keys denied they made any of these statements.

Following the conclusion of proofs, the trial court ruled from the bench and placed its findings of fact and conclusions of law on the record. The trial court opined:

I'm going to start with indicating that the problem with a less than complete, thorough police investigation and less than completely credible witnesses is then you are left with what's absolutely shown by the facts and the testimony. And by that, I mean that the officers, although they came to the scene, they are not presenting the Court the video or the photo of the door or even indication of what they looked at to see how the door was kicked or kicked in or anything like that, not a lot of followup [sic] on even the automobile and the glass and all of that.

But I guess the biggest problem is that the complainants in the case, one of them testified the defendant wasn't pointing guns at them. The other testified he was pointing guns right at them in the store.

They're testifying about that they told the defendant not to call the police which, you know, it's a little bit questionable in that situation when you think about five citizens in the store and one stealing.

It's more likely that that one would be caught by the others or something other than what happened in this particular case. It just doesn't ring completely true.

But on the other hand, in this case, there is a stipulation that the defendant here is a felon. And as far as looking at a defense counsel's request that the Court should find the defendant not guilty of the felony[-]firearm or felon in possession because of the self-defense, again the defendant's own testimony falls short of support for that.

The defendant testifies that he was working, and it was his first day, and it was 10 p.m., but all he can testify to as support for self-defense is seeing five people. Well, that happens at gas stations and party stores every night. So to take that job, you have to accept that five people are going to come into the store most nights, if not every single night. And you just can't reach for a gun.

Then the next thing that is a little more supportive, but not meeting self-defense is a kick at the door. And there's not enough detail with the defense at was there someone coming in saying I'm going to rob you? Was there an indication of maybe a gun? He doesn't say anything like that.

A kick at the door. I mean it could be you [sic] into angry young men just kicking it as they go aside, or it could even be accidental. It's not enough to go reach for a gun especially when you know you're a felon.

So the Court can't just disregard that charge. The fact is when you reach for a gun, and it's discharged, you're reaching for it and reaching the handle. The defendant's not unaware or unfamiliar.

And whether or not he ever fired at the . . . complainant's vehicle, there is some question as to maybe he did, but I don't think it's beyond a reasonable doubt given the circumstances.

But as far as the discharging the gun at all in the store, the Court finds that there is sufficient evidence beyond a reasonable doubt that the defendant discharged a gun in a building and that he possessed the firearm being a felon without sufficient support for the self-defense.

The trial court found defendant guilty of being a felon in possession of a firearm, felony-firearm, and discharge of a firearm in a building. The trial court acquitted defendant of twelve other charges, including four counts of assault with intent to murder, four counts of assault with intent to do great bodily harm less than murder, and four counts of assault with a dangerous weapon. Defendant was sentenced as stated above and this appeal then ensued.

## II. DEFENDANT'S ARGUMENTS AND STANDARDS OF REVIEW.

On appeal, defendant argues that the prosecution failed to rebut his theory of self-defense. Defendant also argues that he raised a duress defense that was not rebutted by the prosecution. By implication, defendant also argues that there was insufficient evidence to convict defendant, based primarily on his argument that the prosecution failed to introduce any evidence to rebut defendant's theory of self-defense.[2]

This Court employs de novo review for challenges to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010), lv den 488 Mich 1045 (2011). This Court reviews the evidence in the light most favorable to the prosecution. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). If any rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt, then the conviction must be affirmed. *Id*. Furthermore, a reviewing court must "draw all reasonable inferences" and give deference to the verdict when making credibility choices. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## III. SELF-DEFENSE.

Defendant first argues that he introduced testimony to support his theory of self-defense at trial, and the prosecution failed to introduce any testimony that refuted this theory. Thus, he argues, the prosecutor failed to present sufficient evidence beyond a reasonable doubt that he did not act in self-defense. The Michigan Legislature has codified self-defense and expanded on the traditional duty to retreat, providing,

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another

---

[2] The prosecution did not file a brief on appeal.

individual anywhere he or she has the legal right to be with no duty to retreat if . . . :

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. See, *People v Stevens*, 306 Mich App 620, 632 ___ NW2d ___ (2014).

When an individual's actions are justified as self-defense, the individual cannot be found guilty of any crime associated with his acts "made in proper self-defense." *People v Dupree*, 486 Mich 693, 708; 788 NW2d 399 (2010) (citations and quotation omitted). This includes the crimes defendant was convicted of: felony-firearm, *People v Goree*, 296 Mich App 293, 302; 819 NW2d 82 (2012), felon in possession of a firearm, *Dupree*, 486 Mich at 707, and discharging a firearm in or at a building, see *id.* at 707-708, quoting 2 *LaFave*, § 10.4(a), pp 143-144 (A defendant's "intentional infliction of (or, if he misses, his attempt to inflict) physical harm upon [another] . . . is said to be justified when he acts in proper self-defense, so that he is not guilty of any crime.") However, once a threat has ended, a defendant is no longer acting in self-defense, but as an aggressor.

"Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 86; 777 NW2d 483 (2009), lv den 486 Mich 928 (2010), citing *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993), lv den 444 Mich 983 (1994). Said another way, a defendant carries a burden of production; he must produce evidence that he acted in self-defense. If that burden of production is met, then the prosecution must satisfy its burden of proof, that defendant did not act in self-defense, beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 155; 815 NW2d 85 (2012).

The only evidence in this case in support of defendant's theory of self-defense was defendant's testimony. Defendant testified that he discharged a firearm in a building because he was in fear for his life after five men came into the convenience store at once, screaming, kicking at the door to his cashier's booth protected by bulletproof glass, and stealing. The prosecution failed to present any evidence as to whether the door was kicked or any witnesses to rebut defendant's testimony. Additionally, the police did what can be best described as a limited investigation, a fact which seemingly frustrated the trial court. However, the prosecution need not present evidence negating every possible theory consistent with defendant's innocence, instead, it must "merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517 (1995). In this case, the prosecution presented a volume of testimony that conflicted with defendant's testimony regarding the events of the day. Keys and Davis testified that they did not steal from the convenience store, they were not with the man that did steal from the convenience store, and probably the most convincing evidence, that Keys and Davis, once they reached a safe location a distance away from the gas station, called police to report the incident. Furthermore, after defendant's testimony, the prosecution called Rambus as a rebuttal witness. Rambus reiterated that when he spoke to defendant after the incident, defendant gave Rambus a description of the vehicle the men drove, told Rambus they ran out of the store, and told Rambus what direction the men travelled in when they left. Rambus' rebuttal

testimony directly conflicts with defendant's story, that he did not follow the men out of the store and could not see them out of the windows once they left.

Additionally, this Court has the benefit of the justifications for the findings made by the fact finder. The trial court opined that defendant's testimony "falls short" for a legally justified self-defense theory. The trial court opined that it was not reasonable, under the circumstances, for defendant to commit these crimes in defense of his own life. The trial court's findings are supported by the evidence. Defendant plainly did not have an honest, or reasonable belief of imminent death or great bodily harm where there was no evidence that the men threatened him, and defendant was safely shielded within a bulletproof glass booth. Viewing all the evidence in the light most favorable to the prosecution and without disturbing the credibility findings of the fact finder, the evidence presented was sufficient for a reasonable finder of fact to conclude that defendant did not act in self-defense when he discharged a firearm in a building, possessed a firearm as a felon, and used a firearm during the commission of a felony. See *Nowack*, 462 Mich at 400 (A reviewing court will not disturb the credibility findings of the fact finder.)

## IV. DURESS

Defendant argues that although he labeled his defense as self-defense instead of duress, he presented a scenario to the trial court that was consistent with a classic duress defense. Defendant argues that he presented evidence that he satisfied the burden of production for a duress defense from the four-part test from *People v Lemons*, 454 Mich 234; 562 NW2d 447 (1997).

As an initial matter, defendant's argument that the prosecutor failed to rebut his theory of duress beyond a reasonable doubt fails because defendant failed to put forth a theory of duress; thus, the issue is unpreserved. In support of his argument that this Court should consider his claim as one of duress, despite solely raising the affirmative defense of self-defense at trial, defendant cites the concurrence from *People v Dupree*, 284 Mich App 89, 113; 771 NW2d 470 (2009) (GLEICHER, J., concurring), aff'd in part 486 Mich 693. However, our Supreme Court ruled that the defendant and the prosecution in that case failed to preserve the issue of duress by failing to raise it to the trial court. *Dupree*, 486 Mich at 703. Specifically, our Supreme Court ruled that, because the defendant did not present evidence that pertained to the defense of duress, the defendant did not otherwise assert the availability of the duress defense for the charge of felon-in-possession, and the prosecution "failed to interpose any issue concerning duress or its attendant burden of proof at trial," the issue had not been preserved for appellate review. *Id*.

This case exactly aligns with *Dupree* in regard to the preservation of the duress issue. At trial, defendant made no claim that the defense of duress applied to this case. Rather, defendant framed his defense as self-defense. Defense counsel made no opening statement, and in closing argument, defense counsel cited to *Dupree* exclusively for the proposition that self-defense could justify a felon's possession of a firearm. The prosecution never interposed any evidence regarding its burden to rebut defendant's prima facie showing of duress because defendant never made a prima facie showing that duress should be available to him as a defense. Therefore, the burden of proof never fell on the prosecution to prove, beyond a reasonable doubt, that defendant was not under duress. See *Lemons*, 454 Mich at 248-249 (holding that where a defendant fails to

meet the burden of production, then the prosecution cannot have presented insufficient evidence because it never carried a burden to disprove the defense).

Nonetheless, even if defendant had properly preserved the availability of the duress defense, his claims would still fail. To successfully carry the burden of production when raising a defense of duress, the defendant must introduce some evidence from which the jury could conclude:

> (A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;

> (B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;

> (C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

> (D) The defendant committed the act to avoid the threatened harm. [*Id*. at 247.]

Defendant claims that he satisfied part (A) of this test because he "testified that in his mind the kicking at the door and running around the gas station and taking stuff made him think he would be killed and there was no testimony that he was not a reasonable person." However, defendant misstates the reasonable person standard. The standard is not whether *defendant* is a reasonable person, but whether a reasonable person would fear death or serious bodily harm under the circumstances. As previously stated, the trial court ruled that a reasonable person would not have feared death or serious bodily harm under the circumstances:

> [A]ll [defendant] can testify to as support for self-defense is seeing five people. Well, that happens at gas stations and party stores every night. So to take that job, you have to accept that five people are going to come into the store most nights, if not every single night. And you just can't reach for a gun.

> Then the next thing that is a little more supportive, but not meeting self-defense is a kick at the door. And there's not enough detail with the defense at was there someone coming in saying I'm going to rob you? Was there an indication of maybe a gun? He doesn't say anything like that.

> A kick at the door. I mean it could be you [sic] into angry young men just kicking it as they go aside, or it could even be accidental. It's not enough to go reach for a gun especially when you know you're a felon.

We concur with the trial court's findings that defendant's belief was not reasonable. Accordingly, this Court has no basis on which to disturb the fact finder's conclusion that defendant's actions were not reasonable, and therefore, the evidence proffered did not support the defense of duress. See *Nowack*, 462 Mich at 400 (deference given to the fact finder); *Lemons*, 454 Mich at 248-249 (where the evidence proffered does not satisfy the burden of production, the defense of duress is not available).

Accordingly, there was sufficient evidence to convict defendant of felon in possession of a firearm, felony-firearm, and discharging a firearm in a building.

Affirmed.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Stephen L. Borrello