*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 18, 2025
3:03 PM

Plaintiff-Appellee,

v

No. 369017
Oceana Circuit Court
LC No. 2022-015472-FC

CARLOS ANDRES SANCHEZ,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Carlos Andres Sanchez, hereinafter defendant, appeals as of right his convictions by jury of first-degree murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced defendant to life in prison without parole for his murder conviction and a two-year consecutive sentence for his felony firearm conviction. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises from the murder of Miguel Gutierrez at the residence of Crystal Gonzalez. Ms. Gonzalez provided testimony indicating that she had an intermittent relationship with defendant. Subsequently, she discovered the defendant with another individual, Marissa Garcia, which prompted her to engage in a relationship with Gutierrez, who was, notably, Garcia's ex-boyfriend in order to "retaliate" against defendant.

On the day of the murder, Ms. Gonzalez was present at her trailer in Montague, Michigan, with Gutierrez, who had been residing there. They were in the process of installing security cameras on the property due to an incident that had damaged Gutierrez's vehicle the previous day. Ms. Gonzalez suspected that defendant was responsible for this damage. According to Ms. Gonzalez's testimony, at approximately noon that day, defendant unexpectedly arrived in his truck, parked the vehicle, exited, approached both her and Gutierrez while brandishing a firearm, and commenced shooting without uttering any words. In response, Ms. Gonzalez fled to a neighbor's residence but looked back to witness the defendant standing over Gutierrez, continuing to fire.

Her neighbor, Amy Velthouse, promptly contacted 911. When first responders arrived, they confirmed Gutierrez's death, noting that he had sustained seven gunshot wounds, including one that perforated his heart, which would have resulted in nearly immediate fatality.

Upon arrival, police officers encountered Ms. Gonzalez, who identified defendant as the assailant and provided details regarding his vehicle and firearm. This information was subsequently communicated through central dispatch to Muskegon County, where defendant resides. A deputy from the Muskegon County Sheriff's Department later observed defendant's truck traveling south on US 31, conducted a traffic stop, and placed him under arrest. During a search of the vehicle, law enforcement discovered a .45 caliber semiautomatic handgun matching the description given by Ms. Gonzalez. This firearm was registered to defendant.

At the location of the murder, police recovered a series of shell casings on the ground, leading from the driveway to Gutierrez's body. This evidence included six spent casings and one live round of ammunition. Forensic testing confirmed, with a significant degree of certainty, that the casings were discharged from defendant's firearm.

Defendant was subsequently charged with first-degree murder. Following the trial, the jury rendered a verdict of guilty, and the trial court imposed a sentence as previously articulated. Defendant now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant argues that the evidence of premeditation was legally insufficient to support his conviction of first-degree murder.

### A. STANDARD OF REVIEW

"In challenges to the sufficiency of the evidence, this Court reviews the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). This standard of review is " 'deferential,' " and the reviewing court must " 'draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Further, the prosecutor does not have to negate every reasonable theory consistent with innocence—the prosecutor is bound only "to prove the elements of the offense beyond a reasonable doubt" and convince the jury "in the face of whatever contradictory evidence the defendant may provide." *Nowack*, 462 Mich at 400 (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Oros*, 502 Mich at 239 (quotation marks and citation omitted).

### B. ANALYSIS

As relevant to the present case, "[m]urder perpetrated by . . . any . . . willful, deliberate, and premeditated killing" is first-degree murder. MCL 750.316(1)(a). The elements that the prosecution must prove are "(1) the intentional killing of a human (2) with premeditation and

deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). In this case, defendant only challenges the sufficiency of the evidence regarding the element of premeditation. Our Supreme Court has defined the term "premeditation," which is undefined in the statute, as meaning "to think about beforehand." *Oros*, 502 Mich at 240 (quotation marks and citation omitted). The Court further stated:

> "Since the distinguishing elements of first-degree murder ultimately resolve themselves into questions of fact, minimum standards of proof, if reasonably related to the circumstances which must be proved, will serve to preserve the distinction between first-degree and second-degree murder." "The real focus of first-degree murder jurisprudence in Michigan has been on the kind of evidence which permits an inference of premeditation and deliberation," and that inference may be established "from *all* the facts of the case." In other words, when considering a sufficiency-of-the-evidence issue, "[t]he question is whether the evidence introduced at the trial fairly supports an inference of premeditation and deliberation."

> * * *

> Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a "second look." That is, "some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation," but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look. "While the minimum time necessary to exercise this process is incapable of exact determination," "[i]t is often said that premeditation and deliberation require only a 'brief moment of thought' or a 'matter of seconds[.]' " "By the weight of authority the deliberation essential to establish murder in the first degree need not have existed for any particular length of time before the killing." "The time within which a wicked purpose is formed is immaterial, provided it is formed without disturbing excitement. The question of deliberation, when all the circumstances appear, is one of plain common sense; and an intelligent jury can seldom be at a loss to determine it."

> "The requisite state of mind may be inferred from defendant's conduct judged in light of the circumstances." In other words, what constitutes sufficient evidence to support the elements of premeditation and deliberation may vary from case to case because the factual circumstances will vary, but the ultimate answer may be resolved in determining whether reasonable inferences may be made to support the fact-finder's verdict. [*Oros*, 502 Mich at 241-244 (citations omitted; first and second alterations in original).]

Premeditation can be inferred from the circumstances surrounding the killing, including through "evidence of (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008).

Here, the jury heard evidence that defendant sent a text message on the morning of the shooting to Garcia, asking for Gutierrez's address. Gutierrez had recently been staying at Gonzalez's trailer. At about noon that day, defendant found Gutierrez at Gonzalez's trailer. When defendant arrived, he got out of his truck and started shooting without saying anything. Defendant shot Gutierrez seven times, killing him. The handgun that was linked to the shooting was registered to and found in the possession of defendant.

From this evidence, the jury could reasonably infer that defendant obtained his handgun, got into his truck, and set out to find and kill Gutierrez. Those inferences support a conclusion that defendant thought about his actions before carrying them out and had time during his drive subject his planned actions to a "second look." Additionally, defendant fired his weapon at the victim seven times, giving defendant leading to a reasonable conclusion that defendant's actions were deliberate and premeditated. Thus, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have reasonably found beyond a reasonable doubt that defendant committed the murder with premeditation and deliberation. *Roper*, 286 Mich App at 83; *Oros*, 502 Mich at 240-244. To the extent defendant appears to argue that the jury should have reached a contrary conclusion and that there was evidence that would have supported a contrary conclusion, we defer to the jury's assessments regarding the weight of the evidence and the credibility of witnesses; it is not our task as an appellate court to redetermine those assessments anew. *Oros*, 502 Mich at 239.

Accordingly, defendant has not demonstrated that there was insufficient evidence of the premeditation element for first-degree murder, and defendant is not entitled to appellate relief.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues in his Standard 4 brief that he was denied the effective assistance of counsel on two grounds and that he is therefore entitled to a new trial.

First, he asserts that Velthouse perjured herself at trial when she testified that she saw defendant drive away after shooting Gutierrez because this contradicts an Oceana County Sheriff's Office police report in which the officer wrote that Velthouse said that she did not see any vehicles leave. Defendant argues that his trial counsel provided ineffective assistance by failing to investigate Velthouse's prior statement and subsequently failing to use the police report to impeach Velthouse during the trial.

Next, defendant argues that defense counsel failed to provide him with a full discovery packet to assist with his own defense. He claims that this failure prevented him from better developing his theory at trial that Gonzalez sought revenge for defendant's infidelity, such as through presenting Gonzalez's text messages to the jury or calling Garcia as a witness.

## A. STANDARD OF REVIEW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Any factual findings are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id*. There has not been an evidentiary hearing on this issue in the present case, and our

review is therefore limited to the existing record. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000).

## B.  STANDARD FOR INEFFECTIVE ASSISTANCE

A criminal defendant's right to the effective assistance of counsel is protected under both the United States Constitution and the Michigan Constitution.  US Const, Am VI; Const 1963, art 1, § 20.  To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).  See also *Strickland v Washington*, 466 US 668, 687, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Sabin (On Second Remand)*, 242 Mich App at 659.

## C.  FAILURE TO USE POLICE REPORT TO IMPEACH

A defense counsel's failure to investigate and pursue a substantial defense may support an argument that counsel's performance was deficient. *People v Chapo*, 283 Mich App 360, 371-272; 770 N.W.2d 68 (2009).  Additionally, counsel may be ineffective "if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).  Generally, a witness may be impeached by any party with a prior inconsistent statement.  MRE 607; MRE 613;[1] *People v Rodriguez*, 251 Mich App 10, 34; 650 NW2d 96 (2002).  However, defense counsel's presumptively strategic trial decisions—such as questioning witnesses and presenting evidence or arguments—should not be second-guessed on appeal. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

Here, defendant argues that his trial counsel failed to adequately investigate Velthouse's prior statement and failed to impeach Velthouse during the trial with her prior inconsistent statement regarding whether she saw defendant drive away from the property, but defendant's contentions are not factually supported by the record.

During cross-examination, defense counsel engaged Velthouse regarding her observations on the day of the shooting. Counsel raised concerns about a potential inconsistency between her trial testimony—where she asserted that she witnessed the defendant driving away—and the police report, which indicated that she did not see anyone leave the scene.  Furthermore, defense counsel cross-examined Deputy Jeremy Swihart concerning his interview with Velthouse and the report that highlighted her purportedly inconsistent statements regarding her observations. In closing argument, defense counsel emphasized that Velthouse had modified her account of whether she

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024.  See ADM File No. 2021-10, 512 Mich lxiii (2023).  We rely on the version of the rules in effect at the time of trial.

saw the defendant on the day of the incident, arguing that her immediate post-incident statement should be regarded as more credible than her testimony offered more than a year later. This strategy clearly illustrated that defense counsel knew of the ambiguity and used it to cast doubt on Velthouse's credibility.

The record further reflects that defense counsel conducted a thorough examination of the police report detailing Velthouse's earlier statements. The overarching strategy focused on undermining her credibility in the eyes of the jury. Consequently, defendant has not successfully established the factual basis for his claim and is not entitled to any relief. See *Lane*, 308 Mich App at 69-70 (rejecting an ineffective assistance of counsel claim because the defendant failed to establish the factual predicate of his claim).

## D. FAILURE TO PROVIDE FULL DISCOVERY

Defendant asserts on appeal that he asked his trial counsel for the "entire discovery file" and "relevant evidence . . . to contest the charges against him," but his counsel failed to provide him with "Exculpatory text messages . . . between Defendant and Crystal Gonzales" and "relevant pathologist sketch pad reports or key photographs . . . that Defendant believes were missing from the autopsy exhibits."

However, defendant does not cite any evidence on this record showing that he made such a request of his trial counsel or that his trial counsel refused to provide defendant with discovery. Moreover, defendant would have been aware of text messages that he sent or received, and defendant does not further identify what "sketch pad reports or key photographs" were missing. Therefore, defendant cannot show that but for trial counsel's alleged deficient performance, there is any reasonable probability that the outcome of the trial would have been different. *Sabin (On Second Remand)*, 242 Mich App at 659.

Defendant further contends that counsel was ineffective for failing to call Garcia as a witness to verify that Gonzalez was seeking revenge against defendant. "Trial counsel's failure to a call a witness is only considered ineffective assistance if it deprived the defendant of a substantial defense. A substantial defense is one that could have affected the outcome of the trial." *Putman*, 309 Mich App at 248 (citation omitted). Here, defendant's trial counsel elicited testimony from Gonzalez on cross-examination that Gonzalez had specifically started seeing Gutierrez as a form of revenge against defendant and that Gonzalez had made social-media posts expressing her anger at defendant and her desire to get "payback." Therefore, the decision to refrain from calling Garcia did not deprive defendant of a substantial defense.

Moreover, "[d]ecisions regarding whether to call or question a witness are presumed to be matters of trial strategy," and "[t]his Court will not second-guess counsel on matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Putman*, 309 Mich App at 248 (quotation marks and citation omitted). Defendant has not presented any evidence to overcome the heavy burden of showing that his trial counsel's reasons for presenting this defense without including Garcia's testimony constituted a sound strategy. *Sabin (On Second Remand)*, 242 Mich App at 659. Defendant also has not demonstrated that he was denied the effective assistance of counsel based on the alleged failures regarding discovery and the presentation of witnesses.

## IV. EVIDENTIARY RULING AT TRIAL

Defendant argues in his Standard 4 brief that he is entitled to a new trial because the trial court erroneously admitted into evidence a photograph of Gutierrez's damaged car. Gonzalez testified that she and Gutierrez were setting up security cameras on the morning of the shooting because someone had "gotten into" their "stuff" the previous night and damaged Gutierrez's car. Gonzalez further testified that she thought defendant was responsible for those acts, but she did not have any evidence to support that theory. On appeal, defendant argues that the photograph should have been excluded from evidence because the photograph was not relevant and its probative value was substantially outweighed by the danger of unfair prejudice.

## A. STANDARD OF REVIEW

Defendant's trial counsel objected to the admission of the photograph based on relevance, and the trial court ruled that the photograph was relevant and admissible. Therefore, defendant's appellate argument is preserved to the extent he argues that the photograph was not relevant. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 383; 741 NW2d 61 (2007) (stating that "an issue is preserved for appellate review when the issued was raised, addressed, and decided by the lower court"). However, defendant did not object on the ground that admission of the photograph would violate MRE 403. "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993). Thus, defendant's appellate argument that the photograph was inadmissible pursuant to MRE 403 is unpreserved. *Id*.

We review preserved arguments regarding the admissibility of evidence for an abuse of discretion. *Unger*, 278 Mich App at 216. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 217. Preliminary questions of law, "such as whether a rule of evidence precludes admissibility," are reviewed de novo. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014).

However, "[n]o judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of . . . the improper admission or rejection of evidence . . . unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCL 769.26. Pursuant to MCL 769.26, it is the defendant's burden to demonstrate that a preserved, nonconstitutional error more probably than not resulted in a miscarriage of justice in order to justify reversal of a conviction. *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). As the *Lukity* Court explained:

> [R]eversal is only required if such an error is prejudicial and that the appropriate inquiry "focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." The object of this inquiry is to determine if it affirmatively appears that the error asserted "undermine[s] the reliability of the verdict." In other words, the effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more

probable than not that a different outcome would have resulted without the error. Therefore, the bottom line is that § 26 presumes that a preserved, nonconstitutional error is not a ground for reversal unless "after an examination of the entire cause, it shall affirmatively appear" that it is more probable than not that the error was outcome determinative. [*Id*. at 495-496 (citations omitted; second alteration in original).]

We review unpreserved claims of evidentiary error for plain error affecting substantial rights. *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). It is defendant's burden to demonstrate prejudice by showing that "the error affected the outcome of the lower court proceedings." *Id*. Even if these three requirements are satisfied, reversal "is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original).

## B. ANALYSIS

In general terms, all relevant evidence is admissible unless otherwise provided by the rules of evidence, Supreme Court rule, or the federal or state constitution, and evidence that is not relevant is not admissible. MRE 402.[2] "Relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

Here, even assuming without deciding that defendant is correct in his assertion that the photograph was not relevant and therefore not admissible, defendant has not demonstrated that it is more probable than not, considering the untainted evidence, that a different outcome would have resulted if the photograph had not been admitted. Gonzalez testified that she saw defendant get out his truck and start shooting at her and Gutierrez and that she saw defendant standing over Gutierrez's body while continuing to shoot him. Given the strength of this evidence that defendant committed the murder, evidence related to the tangential question whether Gutierrez's car was damaged the night before likely had little influence on the jury's verdict. Considering the weight and strength of the untainted evidence, it is not more probable than not that the jury would not have convicted defendant of first-degree murder had the photograph not been admitted at trial. Thus, any error in the admission of this photograph was harmless and does not require reversal.

---

[2] As previously stated, we will rely on the Rules of Evidence as they existed at the time of defendant's trial.

*Lukity*, 460 Mich at 495-496. For the same reasons, defendant cannot demonstrate the requisite prejudice from any plain error—assuming without deciding that one occurred—in admitting the photograph contrary to MRE 403. *Carines*, 460 Mich at 763.

Affirmed.

/s/ Michael J. Kelly
/s/ Stephen L. Borrello
/s/ Michelle M. Rick