*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WALTER RUDY MCCANTS, JR.,

Defendant-Appellant.

UNPUBLISHED
July 16, 2025
11:20 AM

No. 367764
Wayne Circuit Court
LC No. 23-000176-01-FC

Before: GADOLA, C.J., and RICK and YATES, JJ.

PER CURIAM.

Defendant appeals as of right his bench-trial conviction of assault with intent to commit great bodily harm (AWIGBH), MCL 750.84.[1] Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 6 to 10 years' imprisonment. He moved for resentencing while his appeal was pending in this Court, and was resentenced to 3 to 10 years' imprisonment. We affirm.

## I. FACTUAL BACKGROUND

On the date of the incident, defendant was working with Nathan Teubert and Timothy Alford. The three men worked for U.S. Ice, a company that delivers ice to stores. Teubert and Alford were training defendant, who had recently started working for the company. Teubert testified that defendant went to the bathroom without telling him or Alford. Teubert explained that if defendant left the job site, he had to inform dispatch. Teubert believed this angered defendant. Alford testified that defendant went into the party store where they were delivering ice and was not permitted to use their bathroom. Alford stated that defendant came back outside and then "just walked away" without saying anything. Alford explained that defendant was supposed to be loading ice onto a dolly with him, and instead left it to melt. When defendant returned, Alford

---

[1] Defendant was originally charged with assault with intent to commit murder (AWIM), MCL 750.83, AWIGBH, and assault with a dangerous weapon (felonious assault), MCL 750.82. Although unclear from the record, it appears the AWIM and felonious assault charges were dismissed before trial.

-1-

asked where he went, and stated that defendant "started cursing" at him. Alford stated that he told defendant "let's just finish the job" because defendant was "complaining to dispatch." At that point, defendant attacked him. Defendant struck Alford on the head multiple times with his cell phone. Teubert testified that as he was doing so, defendant was saying "die, die, die."

Surveillance video played at trial showed Alford walking away from the delivery truck with a bag of ice in his hands when defendant attacked him. Alford dropped the bag of ice and raised his hands to ward off the blows from defendant. Teubert, who was standing near one of the dollies with an orange hammer in his hands, dropped the hammer and tried to break up the fight. He briefly slipped and fell in the process. The men disappeared behind the truck, and then Teubert appeared on the video again. He and Alford followed defendant toward the road. Defendant was bouncing up and down and appeared to be gearing up to throw a punch. The men talked to each other briefly, at which point defendant picked up the orange hammer and laid it over his shoulder. Defendant then disengaged and went back to the truck. Teubert followed and pulled a backpack out of the cab. Defendant then drove away in the truck.

Alford testified that he attempted to continue unloading ice, until he was told he had to stop because he was "bleeding all over the cooler." According to the surveillance video, Teubert and Alford remained at the store to talk with police, and Alford was taken away by ambulance. Alford received an MRI and seven stitches at the hospital. He testified that he was no longer able to work following the attack because his vision was impaired and he had long-term cognitive deficits.

Defendant testified on his own behalf. He stated that Alford was upset with him because he went to use the bathroom without telling anyone where he was going. Alford then told him to get back up in the truck so they could continue unloading the ice. Defendant testified at that point, Alford ran up behind him and pushed him so hard that he "flew back into the back of the truck." Defendant then went to the front of the truck to call dispatch and tell them he had been assaulted. Defendant further testified that Alford said, "I ought to slap you" and used a racial slur against him because he called to report Alford to dispatch. Defendant then testified that "at that point . . . he done already assaulted me. I'm just—I don't know what to do, but defend myself." As defendant explained, Alford "kind of" moved his hand and that he thought Alford was going to assault him again. Defendant confirmed that, after the attack, he left the scene in the delivery truck and returned it to U.S. Ice. He stated that Teubert also called him a racial slur while Teubert was getting his backpack out of the truck.

The trial court found defendant guilty of AWIGBH. In addressing his self-defense claim, the trial court concluded that Alford's alleged assault of defendant was too far removed in time for defendant's assault of Alford to constitute self-defense. The court also observed that the use of racial slurs does not justify assault. Defendant was later convicted and sentenced as earlier described. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE: SELF-DEFENSE

Defendant argues that the prosecution presented insufficient evidence to rebut his theory that he acted in lawful self-defense by striking Alford. We disagree.

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). "In analyzing these sufficiency claims, this Court must review the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Powell*, 278 Mich App 318, 320; 750 NW2d 607 (2008) (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the . . . verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Defendant was convicted of AWIGBH. "The elements of AWIGBH are (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks and citation omitted). "AWIGBH is a specific intent crime." *Id*. "Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats." *Id*. at 629. "[I]njuries suffered by the victim may also be indicative of a defendant's intent." *Id*.

In his brief on appeal, defendant does not challenge the sufficiency of the evidence regarding the assault or his intent to do great bodily harm.[2]  Instead, he maintains that the prosecution provided insufficient evidence to disprove his self-defense theory.  The Self-Defense Act, MCL 780.971 *et seq*., states, in relevant part:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.  [MCL 780.972(1)(a).]

"The reasonableness of a person's belief regarding the necessity of deadly force depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *People v Guajardo*, 300 Mich App 26, 42; 832 NW2d 409 (2013) (quotation marks and citation omitted).  "In general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *Id*. at 35.  Procedurally, defendant has the initial burden of "producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist[.]" *People v Rajput*, 505 Mich 7, 11; 949 NW2d 32 (2020) (quotation marks and citation omitted).  After the defendant does so, "the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt." *Id*.

---

[2] Defendant challenges the element of intent in his Standard 4 brief, see Section III(C) below.

Defendant claims that he acted in self-defense because Alford initially pushed him while the two men were inside the truck.  After calling U.S. Ice to report the assault, defendant testified that Alford used a racial slur against him and "kind of" moved his hand.  Surveillance video indicated that defendant struck Alford repeatedly with his cell phone.  The trial court found that even if Alford initially pushed defendant inside the truck, the time period between that assault and defendant's attack was too attenuated to justify defendant's actions.  We agree.

Recently, in *People v Leffew*, 508 Mich 625, 651; 975 NW2d 896 (2022) (quotation marks and citation omitted; emphasis added), our Supreme Court noted that the factfinder should "consider how the *excitement of the moment* affected the choice [the defendant] made."  In *Guajardo*, 300 Mich App at 42, this Court likewise noted "threats of future harm do not constitute imminent danger for purposes of self-defense."  Taken together, these cases bely defendant's argument that he was justified in attacking Alford.  Further, any conflicts in evidence must be resolved in the prosecution's favor.  See *Johnson*, 340 Mich App at 548.  But even if that were not the case, defendant waited several minutes before confronting Alford.  By that point, Alford ceased being an imminent threat, and defendant could not have reasonably acted in self-defense by striking him with the cell phone.  Thus, on this record, the prosecution presented sufficient evidence to rebut defendant's self-defense claim.

### III.  DEFENDANT'S STANDARD 4 BRIEF

### A.  SUPPRESSION OF EVIDENCE

In his Standard 4 Brief, defendant argues that he is entitled to a new trial because the prosecution suppressed exculpatory evidence in violation of *Brady v Maryland,* 373 US 83, 87; 83 S Ct 1194; 10 L Ed2d 215 (1963).  We disagree.

To preserve a *Brady* claim, a defendant must move in the trial court for a new trial or for relief from judgment.  *People v Abcumby-Blair*, 335 Mich App 210, 217; 966 NW2d 437 (2020).  Defendant raised the prosecution's purported improper suppression of a Detroit police report in his motion for a judgment of acquittal, a new trial, or resentencing, which he filed as a self-represented litigant.  As will be discussed later, the trial court did not review the motion because defendant attempted to represent himself while simultaneously represented by appellate counsel.  Even so, this Court has found that, to preserve a claim of error, it is sufficient for a party to raise it before the trial court, even if the court does not address or decide the matter.  See *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021) ("To preserve an issue, a party must raise it before the trial court.").  We thus consider this portion of his argument preserved.  At the same time, defendant also raises arguments regarding the alleged suppression of additional pieces of evidence for the first time on appeal.  Those portions of the issue are thus unpreserved.

Generally, "this Court reviews due process claims, such as allegations of a *Brady* violation, de novo."  *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016) (quotation marks and citation omitted).  But unpreserved issues are reviewed for plain error affecting substantial rights.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights."  *Id*.  "The third

requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

" '[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady*, 373 US at 87. "Stated differently, the components of a true Brady violation[] are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Chenault*, 495 Mich at 149 (quotation marks omitted).

Defendant first argues that the prosecutor suppressed a police report containing exculpatory information. A review of the record confirms that the prosecutor initially failed to provide the report to defendant, satisfying the first prong of the *Brady* test. *Id*. at 150. The prosecutor ultimately turned over the report when defendant moved for postconviction relief.

However, defendant cannot satisfy the remaining prongs of the *Brady* test because the evidence was not favorable to the accused. The contents of the police report merely include statements by Alford and Teubert corroborating their version of events. The evidence was also cumulative of other evidence defendant received before trial, and was thus not material. When determining whether evidence is material, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Chenault*, 495 Mich at 157 (quotation marks and citation omitted). Again, the police report contains statements from Alford and Teubert, which corroborated their trial testimony and the contents of the surveillance video. Even without the police report, "defendant received a fair trial that resulted in a verdict worthy of confidence, because the cumulative effect of the evidence was not material." *Id*. As a result, the prosecutor's failure to turn over the Detroit police report did not constitute a *Brady* violation. See *id*. at 150.

Defendant also states that he requested discovery in addition to the police report. Specifically, he requested that the prosecutor turn over (1) the police report given to defense counsel; (2) copies of all communications from Alford seeking to charge defendant; (3) accurate copies of police reports, dispatch tapes, field notes; (4) accurate copies of all affidavits and warrants; (5) records from the day of defendant's arrest; and (6) copies of all statements regarding his arraignment.

To understand where this request originated, we must create a brief timeline of events. According to the record, on July 10, 2024, defendant filed a motion for a judgment of acquittal, a new trial, or for resentencing. At a hearing on that motion, held August 9, 2024, defendant requested substitution of counsel. At the time, defendant was represented by appellate counsel. Defendant explained that he asked appellate counsel to get a copy of the police report, but claimed she had failed to do so. He thus wanted to be represented by new counsel. Appellate counsel informed the court that defendant "was originally charged with this I believe in '22, and it went to the District Court. And I believe the prosecutor put something on the record about this police report that he's referring to, and the case was dismissed." Appellate counsel further explained that the charges were reinstated the following year.

Appellate counsel noted that the prosecution did not provide a copy of the aforementioned police report, despite appellate counsel's requests. Appellate counsel maintained that "this police report itself would have very little evidentiary value, but it would have given trial counsel the name of somebody to call as a witness if that police officer had a different opinion than whoever requested the warrant." The trial court explained to defendant that his "case, as far as evidence goes, is from the time that you were arraigned on the warrant for this new case. The previous case doesn't have anything to do with it." Nevertheless, the trial court specified that it would enter an order directing defendant's trial counsel provide defendant with a copy of the police report. It held defendant's motion to substitute counsel in abeyance pending receipt of the report.

That same day, defendant filed a motion for a judgment of acquittal, a new trial, or resentencing, as a self-represented litigant, despite being represented by appointed counsel. In the motion, he claimed that his defense counsel and appellate counsel asked for the same six categories of documents that defendant now seeks on appeal. At a hearing held on August 23, 2024, the trial court acknowledged that it did not read defendant's motion because he was represented by counsel when he filed it.[3] Appellate counsel indicated that she received the police report and sent it to defendant. Notably, no *Brady* motion was filed in the trial court following the receipt of the police report.

Defendant suggests that any withholding of evidence by the prosecutor is a per se *Brady* violation. But defendant overlooks that the relevant inquiry under *Brady* only concerns whether *exculpatory* evidence has been improperly suppressed. See *People v Burger*, 331 Mich App 504, 518; 953 NW2d 424 (2020) (quotation marks and citation omitted) ("[A] defendant's right to due process may be violated by the prosecution's failure to produce exculpatory evidence in its possession."). Nothing in the record supports defendant's assertion that exculpatory evidence exists in any of these materials. More importantly, defendant cannot show that the absence of these materials resulted in prejudice. See *Carines*, 460 Mich at 763. Trial testimony and evidence overwhelmingly supported his conviction, leading the trial court to reject his self-defense theory. It is unclear how any of this evidence would have resulted in a different outcome. See *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994) (citation omitted) (stating that in general, when a discovery request is made, disclosure should not occur when the record reflects that the party seeking disclosure is on "a fishing expedition to see what may turn up"). Ultimately, the record does not support defendant's argument that a *Brady* violation occurred.

## B. PROSECUTORIAL MISCONDUCT[4]

---

[3] The trial court was under no obligation to read the motion. See *People v Belanger*, 227 Mich App 637, 641; 576 NW2d 703 (1998) (stating that defendants have a constitutional right to represent themselves in a criminal proceeding, *or* to be represented by counsel, but not both at the same time).

[4] "As this Court recently noted . . . although the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with

Defendant next argues that the prosecutor committed misconduct because he elicited perjured testimony from Teubert and Alford. We disagree.

"In cases alleging prosecutorial misconduct, issues are preserved by contemporaneous objections and requests for curative instructions[.]" *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020) (quotation marks and citation omitted). Because defendant did not contemporaneously object or request a curative instruction, his claim of prosecutorial misconduct is unpreserved. "Unpreserved issues are reviewed for plain error affecting substantial rights." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and citation omitted; alteration in original).

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's [actions] in context and in light of the defendant's arguments." *People v Lane*, 308 Mich App 38, 62-63; 862 NW2d 446 (2014). "Generally, '[p]rosecutors are accorded great latitude regarding their arguments and conduct.' " *People v Bahoda*, 448 Mich 261, 262; 531 NW2d 659 (1995) (citation omitted; alteration in original). "Prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011).

"It is well established that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction[.]" *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015) (quotation marks and citation omitted). Indeed, "a prosecutor's knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Loew*, 340 Mich App 100, 128; 985 NW2d 255 (2022) (quotation marks and citation omitted); see also US Const, Am XIV. "Thus, to prove prosecutorial misconduct on the basis of perjury, a defendant must show two things—first, that a witness knowingly made a false statement, and second, that the prosecutor knowingly elicited the false statement." *Loew*, 340 Mich App at 128.

Defendant's argument fails to meet either prong. See *id.* First, defendant cannot satisfy his burden of showing Teubert and Alford made "willfully false statement[s]" at trial. *Lively*, 470

---

only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (quotation marks and citation omitted).

Mich at 253. Teubert and Alford each testified consistent with the surveillance video. Defendant argues that the testimony was at times inconsistent, particularly regarding whether Teubert heard Alford say anything before the altercation occurred, and whether defendant went into the store to use the restroom at some point before striking Alford. Conflicting statements are "not definitive evidence that the trial testimony is false." *People v Bass*, 317 Mich App 241, 275; 893 NW2d 140 (2016). The trial court heard the testimony, assessed the witnesses' credibility, and viewed the surveillance video. The trial court thus made factual determinations based on the totality of the evidence. We see no cause to disturb those findings here.

Second, as in *Loew*, defendant "does not present any evidence that the prosecutor *knowingly* sought false testimony." *Loew*, 340 Mich App at 128 (emphasis added). The prosecutor called two witnesses who provided testimony that was corroborated by the surveillance video and later by the Detroit police report. The witnesses were cross-examined, and defendant was provided the opportunity to testify about his version of the events. Nothing in the record supports the allegation that the prosecutor committed the alleged misconduct in this matter. As a result, defendant cannot establish plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

## C. SUFFICIENCY OF THE EVIDENCE: INTENT

Defendant additionally argues that the prosecution presented insufficient evidence of intent. We disagree.

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *Lane*, 308 Mich App at 57. "In analyzing these sufficiency claims, this Court must review the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Powell*, 278 Mich App at 320 (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the . . . verdict." *Nowack*, 462 Mich at 400.

As discussed above, "[t]he elements of AWIGBH are (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *Stevens*, 306 Mich App at 628 (quotation marks and citation omitted). "The intent to do great bodily harm less than murder is an intent to do serious injury of an aggravated nature." *Id*. at 629 (quotation marks and citation omitted). "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *Id*. "Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats." *Id*. "Although actual injury to the victim is not an element of the crime, . . . injuries suffered by the victim may also be indicative of a defendant's intent . . . ." *Id*. (citations omitted).

The record reflects that Alford was walking away from defendant with a bag of ice in his hands when defendant attacked him. Teubert testified that he heard defendant "say die, die, die, as he smashed [Alford] on the head with his phone." Alford suffered serious injuries affecting his eyesight and cognition. Although a cell phone is not inherently a dangerous weapon, our Supreme

-8-

Court has held that "[o]ther articles and instruments become dangerous weapons only when they are used or carried for use as weapons." *People v Vaines*, 310 Mich 500, 505; 17 NW2d 729 (1945). "The character of a dangerous weapon attaches by adoption when the instrumentality is applied to use against another in furtherance of an assault." *Id*. In other words, using a cell phone to bludgeon someone on the head makes it a dangerous weapon, because "instrumentality is adapted to accomplishment of the assault and capable of inflicting serious injury . . . ." *Id*. Defendant's unprovoked attack, his use of a cell phone as a dangerous weapon to strike Alford multiple times, and Alford's resulting injuries provide the circumstantial evidence necessary to "show defendant had the requisite intent." *Stevens*, 306 Mich App at 629. The prosecution thus provided sufficient evidence of defendant's intent. Defendant's argument to the contrary must fail.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, defendant argues that his defense counsel was ineffective, purportedly because she failed to use exculpatory evidence. We disagree.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). To preserve an ineffective assistance of counsel claim for appellate review, a defendant must move for a new trial or request an evidentiary hearing in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or file with this Court a motion to remand for a Ginther[5] hearing, *Abcumby-Blair*, 335 Mich App at 227. Defendant moved for a new trial and raised ineffective assistance of counsel in his self-represented motion for a judgment of acquittal and new trial. As earlier noted, that motion was not reviewed by the trial court because defendant submitted it as a self-represented litigant, while simultaneously represented by counsel. Nevertheless, a party may preserve a claim of error merely by raising it in the trial court, even if the court does not address the issue. See *Swenor*, 336 Mich App at 562. We thus consider this issue preserved for appellate review. However, because the trial court did not conduct a *Ginther* hearing, our "review is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

A defendant who seeks to establish a claim of ineffective assistance of counsel must show "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Counsel is presumed to be effective and defendant bears the burden of proving otherwise. *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021). Defendant likewise bears the burden to establish the factual predicate for the claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant contends that defense counsel was ineffective because she "perform[ed] the bare minium [sic] of defense and refus[ed] to use the evidence that was here to use that if used could

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

have won the case." Defendant initially claims that he was charged with more serious crimes than the facts of the case necessitated. He explains that this is so because the charges were based on Alford's initial account of the event. At the time, he told police that he believed defendant struck him with a hammer. Defendant observes that the surveillance video submitted in the trial court established he did not use a hammer to strike Alford. In any event, defendant was initially charged as a fourth-offense habitual offender, MCL 769.12, with AWIM, MCL 750.83; AWIGBH; and felonious assault, MCL 750.84. All of the charges except AWIGBH were dismissed before trial. Defendant further argues that, at his first arraignment on September 8, 2022, the prosecutor purportedly noted that he had a file stating that defendant could press charges against Alford. This hearing is not listed in the register of actions. Defendant additionally contends that defense counsel's performance was ineffective because she failed to request a police report and police body cam footage from the Westland Police Department, who were present at U.S. Ice when defendant returned the truck to headquarters. We surmise from defendant's brief that he believes that the charges against him were retaliation for some unrelated offense. Regardless, defendant provides no evidence to support these arguments.

As much as we can understand defendant's arguments on this point, our review of the record reveals no apparent errors in defense counsel's performance. See *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). Defense counsel's trial strategy was to argue that defendant acted in self-defense because Alford allegedly pushed defendant inside the delivery truck, and later used a racial slur, which made defendant fear that he would be attacked a second time. The trial court considered the evidence, as well as defendant's theory of the case, and ultimately convicted defendant of AWIGBH. Defense counsel's conduct was objectively reasonable and her trial strategy was sound. See *Trakhtenberg*, 493 Mich at 52. Further, because the evidence against defendant was so overwhelming, defendant cannot show prejudice, even if defense counsel refused to pursue defendant's alternate theories. See *id*. Defendant's claim therefore lacks merit.

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Christopher P. Yates